FILED

2016 MAY 31  PM 1:35

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

THOMAS COOK and EMANUEL
BERMUDEZ, individually and on
behalf of all others similarly situated,

      Plaintiffs,

      v.

PALMER, RIEFLER & ASSOCIATES,

      Defendant.

CASE NO.: 3:16-CV-673-J-39JRK

**Jury Demanded**

## COMPLAINT - CLASS ACTION

Plaintiffs, Thomas Cook and Emanuel Bermudez, individually and on behalf of all others similarly situated, bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") for violation by the Defendant, Palmer, Reifler & Associates, PA.

### JURISDICTION AND VENUE

1.    This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. §1337, and 47 U.S.C. § 227 (TCPA).

2.    Venue in this District is proper because the acts occurred here, Plaintiff Thomas Cook resides here, and Defendant transacts business here.

### PARTIES & FACTS

3.    Plaintiff Thomas Cook is, and at all times mentioned herein was, an individual citizen of the State of Florida, who resides in St. Augustine Florida, which is located in the Middle District of Florida.

4. Plaintiff Emanuel Bermudez is, and at all times mentioned herein was, an individual citizen of the State of Florida, who resides in Margate Florida, which is located in the Southern District of Florida.

5. Palmer, Reifler & Associates, PA (Palmer) is headquartered in Orlando Florida, and is a law firm focused on civil recovery, loss prevention, and debt collection, including sending "civil theft" letters on behalf of large retailers.

6. Defendant Palmer is authorized to conduct, and so regularly conducts, business in the State of Florida.

7. Plaintiffs are, and at all times mentioned herein were a "person" as defined by 47 U.S.C. §153(39).

8. Palmer is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. §153(39).

9. In or around November 2015, Plaintiff Cook began receiving numerous telephone calls on his cellular telephone from Palmer, seeking to reach an individual other than himself.

10. Palmer continued to call Plaintiff Cook's cellular telephone throughout December 2015 and January and February 2016, including the following: one call on December 11, 2015, a call on December 17 2015, a call on December 22 2015, a call on January 6, 2016, a call on January 7, 2016, a call on January 18, 2016, a call on January 21, 2016, a call on January 27, 2016, a call on January 28, 2016, two calls on February 2, 2016, a call on February 5, 2016, a call on February 11, 2016, and a call on February 7, 2016.

2

11.   Despite Plaintiff Cook answering many of the calls and calling Palmer several times, Plaintiff Cook was met with only prerecorded voices and was therefore unable to speak with an agent and/or representative of Palmer.

12.   Palmer's telephone system is designed to make it difficult or impossible for an individual to speak directly with an agent and/or representative of Palmer, especially if Palmer never had consent to call the individual.

13.   At all times relevant herein, Plaintiff Cook has been the user, subscriber and has exercised dominion and control of his cellular telephone number that received the subject calls which form the basis of this action.

14.   In or around December 2015, Plaintiff Bermudez began receiving numerous telephone calls on his cellular telephone from Palmer, seeking to reach an individual other than himself.

15.   Palmer continued to call Plaintiff Bermudez's cellular telephone throughout December 2015 and January, February, March and April 2016, including the following: one call on December 16, 2015, a call on December 17 2015, a call on December 21 2015, a call on December 23, 2015, a call on December 30, 2015, a call on January 6, 2016, a call on January 7, 2016, a call on January 14, 2016, a call on January 18, 2016, three calls on January 19, 2016, a call on January 21, 2016, a call on February 2, 2016, a call on February 5, 2016, a call on March 5, 2016, a call on March 11, 2016, a call on March 18, 2016, a call on March 25, 2016, a call on March 29, 2016, a call on April 1, 2016.

16.   During at least one of these communications Plaintiff Bermudez

3

notified Palmer that he does not know the unknown female which Palmer was attempting to reach and that she could not be reached at Plaintiff Bermudez's cellular telephone number.

17.     At all times relevant herein, Plaintiff Bermudez has been the user, subscriber and has exercised dominion and control of his cellular telephone number that received the subject calls which form the basis of this action.

18.     Palmer placed all of the above referenced calls to Plaintiffs' cellular telephone number using an "automatic telephone dialing system" ("ATDS"), as that term is defined by 47 U.S.C. § 227 (a)(1), meaning it had the capacity to store or produce numbers randomly or sequentially, and to dial such numbers, and to place telephone calls to Plaintiffs' cellular telephone.

19.     Palmer did not have Plaintiffs' prior express consent to place calls to Plaintiffs' cellular telephone numbers using an ATDS or an artificial or pre-recorded voice message.

20.     Plaintiffs are not the people who Palmer is attempting to reach, are not parties to any debt, contract, or obligation with Palmer, and have never provided their cellular telephone numbers to Palmer for any purpose.

## THE TCPA

21.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices - for example, computerized calls to private homes. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-

4

law prohibitions on intrusive nuisance calls. *See Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012).

22. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers" aka "robodialer." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

23. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

24. In 2003, the FCC held that predictive dialers like the one used by defendant constitute an ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 F.C.C.R. 14014, 14115, ¶ 131 (July 3, 2003).

25. The FCC also held "[c]onsumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *In the*

5

*Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order, FCC 15-72, 2015 FCC LEXIS 1586, ¶ 63, 30 FCC Rcd 7961, 2015 FCC LEXIS 1586, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015) ("FCC 2015 Order").

26.    Verbal instructions to cease collection calls apply to the TCPA and thus effectively revoke any prior consent the caller may have had. *Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242 (11th Cir. 2014).

## COUNT I: VIOLATION OF THE TCPA

27.    Plaintiffs restate each of the factual allegations in all other paragraphs as if full stated herein.

28.    This claim is for violation of the TCPA by Palmer.

29.    The telephone calls from Palmer to Plaintiffs' cellular telephone number were made using an ATDS.

30.    The subject calls were placed using a predictive dialer.

31.    Many of the subject calls were placed using an artificial or pre-recorded voice message.

32.    Palmer placed calls to Plaintiffs at a telephone number assigned to a cellular telephone service.

33.    The telephone calls Palmer placed to Plaintiffs were not placed for emergency purposes, as defined by TCPA § 227 (b)(1)(A)(i).

34.    Palmer made unsolicited telephone calls to the wireless telephone number of plaintiffs and the other members of the class using a pre-recorded voice

6

and or using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

35.     At the time Palmer placed the phone calls alleged herein, Palmer did not have express consent to do so.

36.     Palmer has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for any person within the United States "… to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … ".

37.     As a result of Palmer's illegal conduct, the members of the class suffered actual damages and, under § 227(b)(3)(B), and are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

38.     Plaintiffs and class members are also entitled to, and do, seek injunctive relief prohibiting Palmer's violations of the TCPA in the future.

## CLASS ALLEGATIONS

39.     Plaintiffs restate each of the allegations in all other paragraphs as if full stated herein.

40.     Plaintiffs, individually and on behalf of all others similarly situated, bring the above claims on behalf of a Class.

41.     The Class consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Palmer placed a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiffs or an artificial or prerecorded

7

voice (5) within 4 years of the complaint (6) where Palmer did not have express consent to call said cellular telephone number.

And two sub classes:

*Sub-Class A*
(1) All persons in the United States (2) to whose cellular telephone number (3) Palmer placed a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiffs or an artificial or prerecorded voice (5) within 4 years of the complaint (6) who was not the person alleged to owe the debt in question.

*Sub-Class B*
(1) All persons in the United States (2) to whose cellular telephone number (3) Palmer placed a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiffs or an artificial or prerecorded voice (5) within 4 years of the complaint (6) after that person had instructed Palmer to cease calls to that number.

42.    Palmer has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls; such calls are also an intrusion upon seclusion, invasion of privacy, diminish cellular battery life, and waste time.

43.    Plaintiffs represent and are members of the Class and each subclass. Excluded from the Class are Defendant and any entities in which Palmer has a controlling interest, Palmer's agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

8

44.    Plaintiffs do not know the exact number of members in the Class, but based upon the size of Palmer's business, and the use of automated software to make the debt collection calls, Plaintiffs reasonably believe that the class members' number at a minimum hundreds, if not in the thousands.

45.    Plaintiffs and all members of the Class have been harmed by Palmer's actions.

46.    This Class Action Complaint seeks money damages and injunctive relief.

47.    The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Palmer.

48.    There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

       a.  Whether Palmer engaged in a pattern of using an ATDS to place calls to cellular telephones;

       b.  Whether Palmer's dialer delivers pre-recorded messages to cellular telephones;

       c.  Whether Palmer's conduct was knowing or willful;

9

d. Whether Palmer's actions violated the TCPA.

49. As persons who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, all within the meaning of the TCPA, Plaintiffs assert claims that are typical of the members of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and Plaintiffs do not have an interest that is antagonistic to any member of the Class.

50. Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

51. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Palmer to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Palmer is small because the statutory damages in an individual action for violation of the TCPA is small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

52. Palmer has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate. Moreover, Plaintiffs allege that the

10

TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in their favor and favor of the Class, and against Palmer for:

1. A declaration that Palmer's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

2. A declaration that Palmer used an ATDS to call the Plaintiffs;

3. An injunction requiring Defendant not to call any reassigned numbers or numbers that were skip-traced to ensure that Plaintiffs are not called if Plaintiffs obtain additional telephone numbers in the future;

4. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any reassigned numbers or numbers that were skip-traced to ensure that Plaintiffs are not called in the future;

5. An injunction requiring Defendant not to call any numbers after a request to cease communications to ensure that Plaintiffs are not called in the future;

6. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any numbers after a request to cease communications to ensure that Plaintiffs are not called in the future;

7. An injunction requiring Defendant not to call any reassigned numbers or numbers that were skip-traced to ensure that class members are not called if they obtain additional telephone numbers in the future;

8. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any reassigned numbers or numbers that were skip-traced to ensure that class members are not called in the future;

9. An injunction requiring Defendant not to call any numbers after a request to cease communications to ensure that the class members are not called in the future;

10. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any numbers after a request to cease communications to ensure that the class members are not called in the future;

11. An award of actual damages;

12. An award of statutory damages for Plaintiffs and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

13. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiffs and each Class member for each and every call that violated the TCPA;

14. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes;

15. Attorney's fees, litigation expenses and costs of suit; and

16. Such further and other relief the Court deems reasonable and just.

### JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, demand trial by jury.