IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| THOMAS COOK and EMANUEL BERMUDEZ, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 3:16-cv-673-BJD-JRK |
| v. | ) ) | District Judge Brian J. Davis |
| PALMER, REIFLER & ASSOCIATES, and WAL-MART STORES, INC., | ) ) ) ) | Magistrate Judge James R. Klindt |
| Defendants. | ) | **Jury Demanded** |

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Thomas Cook and Emanuel Bermudez, individually and on behalf of all others similarly situated, bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") for violation by the Defendants Palmer, Reifler & Associates, PA, and Wal-Mart Stores, Inc.

1. This is an action for damages arising under 47 U.S.C. § 227 et seq., the Telephone Consumer Protection Act ("TCPA"). Among other things, the TCPA prohibits using an automatic telephone dialing system ("ATDS"), or an artificial or prerecorded voice, to call a telephone number assigned to a cellular telephone without the called party's prior express consent. Defendants, in contravention of the aforementioned Act, have imparted concrete and particularized injury upon Plaintiffs by placing such calls or causing such calls to be placed to them during the time frame relevant to this action.

2. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the

type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy.").

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. §1337, and 47 U.S.C. § 227 (TCPA).

4. Venue in this District is proper because the acts occurred here, Plaintiff Thomas Cook resides here, and Defendants transact business here.

## PARTIES & FACTS

5. Plaintiff Thomas Cook is, and at all times mentioned herein was, an individual citizen of the State of Florida, who resides in Ocala, Florida, which is located in the Middle District of Florida.

6. Plaintiff Emanuel Bermudez is, and at all times mentioned herein was, an individual citizen of the State of Florida, who resides in Tamarac, Florida, which is located in the Southern District of Florida.

7. Palmer, Reifler & Associates, PA ("Palmer") is headquartered in Orlando, Florida, and is a law firm focused on civil recovery, loss prevention, and debt collection, including sending "civil theft" letters on behalf of large retailers.

8. Defendant Palmer is authorized to conduct, and so regularly conducts, business in the State of Florida.

9. Defendant, Wal-Mart, is a Delaware corporation that maintains its headquarters at 702 SW 8th Street, Bentonville, AR 72716. Its registered agent in Florida is CT Corporation System. Wal-Mart is the world's largest public corporation and operates retail stores throughout the United States.

10. Plaintiffs are, and at all times mentioned herein were a "person" as defined by 47 U.S.C. §153(39).

11. Defendants are, and at all times mentioned herein were a "person" as defined by 47 U.S.C. §153(39).

12. In or around November 2015, Plaintiff Cook began receiving numerous telephone calls on his cellular telephone from Palmer or on behalf of Palmer, seeking to reach an individual other than himself.

13. Palmer continued to call or caused calls to be made to Plaintiff Cook's cellular telephone throughout December 2015 and January and February 2016, including the following: one call on December 11, 2015, a call on December 17 2015, a call on December 22 2015, a call on January 6, 2016, a call on January 7, 2016, a call on January 18, 2016, a call on January 21, 2016, a call on January 27, 2016, a call on January 28, 2016, two calls on February 2, 2016, a call on February 5, 2016, a call on February 11, 2016, and a call on February 7, 2016.

14. Despite Plaintiff Cook answering many of the calls and calling Palmer several times, Plaintiff Cook was met with only prerecorded voices and was therefore unable to speak with an agent and/or representative of Palmer.

15. Palmer's telephone system is designed to make it difficult or impossible for an

individual to speak directly with an agent and/or representative of Palmer, especially if Palmer never had consent to call the individual.

16. On information and belief, Palmer's calls to Plaintiff Cook were made on behalf of Dillards.

17. For all the relevant calls herein, Plaintiff Cook was the user, subscriber and has exercised dominion and control of his cellular telephone number that received the subject calls which form the basis of this action.

18. In or around December 2015, Plaintiff Bermudez began receiving numerous telephone calls on his cellular telephone from Palmer or on behalf of Palmer, seeking to reach an individual other than himself.

19. Palmer continued to call or caused calls to be made to Plaintiff Bermudez's cellular telephone throughout December 2015 and January, February, March and April 2016, including the following: one call on December 16, 2015, a call on December 17, 2015, a call on December 21, 2015, a call on December 23, 2015, a call on December 30, 2015, a call on January 6, 2016, a call on January 7, 2016, a call on January 14, 2016, a call on January 18, 2016, three calls on January 19, 2016, a call on January 21, 2016, a call on February 2, 2016, a call on February 5, 2016, a call on March 5, 2016, a call on March 11, 2016, a call on March 18, 2016, a call on March 25, 2016, a call on March 29, 2016, and a call on April 1, 2016.

20. All of the above calls to Plaintiff Bermudez were placed using a prerecorded voice message, but during at least one of these communications Plaintiff Bermudez notified Palmer that he does not know the unknown female which Palmer was attempting to reach and that she could not be reached at Plaintiff Bermudez's cellular telephone number.

21. On information and belief, Palmer's calls to Plaintiff Bermudez were made on behalf of Wal-Mart.

22. At all times relevant herein, Plaintiff Bermudez has been the user, subscriber and has exercised dominion and control of his cellular telephone number that received the subject calls which form the basis of this action.

23. Palmer placed or caused to be placed all of the above referenced calls to Plaintiffs' cellular telephone number using an "automatic telephone dialing system" ("ATDS"), as that term is defined by 47 U.S.C. § 227 (a)(1), meaning it had the capacity to store or produce numbers randomly or sequentially, and to dial such numbers, and to place telephone calls to Plaintiffs' cellular telephone.

24. Palmer did not have Plaintiffs' prior express consent to place calls or caused to be placed to Plaintiffs' cellular telephone numbers using an ATDS or an artificial or pre-recorded voice message.

25. Plaintiffs are not the people who Palmer was attempting to reach, are not parties to any debt, contract, civil theft, or obligation with Palmer, and have never provided their cellular telephone numbers to Palmer or their clients.

## THE TCPA

26. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices - for example, computerized calls to private homes. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. *See Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012).

27. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers" aka "robodialer." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

28. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

29. In 2003, the FCC held that predictive dialers like the one used by or caused to be used by Defendant Palmer constitute an ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 F.C.C.R. 14014, 14115, ¶ 131 (July 3, 2003).

30. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that automated or prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See* In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 F.C.C. Rcd. 559 ¶1 (Jan. 4, 2008) ("2008 FCC Ruling"). The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless

number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Id. at ¶9-¶10.

31. In the same Declaratory Ruling, the FCC emphasized that both the creditor and the third party debt collector may be held liable under the TCPA for debt collection calls. Id. at ¶10 & n.38 ("A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call…. A third party collector may also be liable for a violation of the Commission's rules.").

32. The FCC also held "[c]onsumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order, FCC 15-72, 2015 FCC LEXIS 1586, ¶ 63, 30 FCC Rcd 7961, 2015 FCC LEXIS 1586, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015) ("FCC 2015 Order").

33. Verbal instructions to cease collection calls apply to the TCPA and thus effectively revoke any prior consent the caller may have had. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

### COUNT I: VIOLATION OF THE TCPA

34. Plaintiffs restate each of the factual allegations in all other paragraphs as if full stated herein.

35. This claim is for violation of the TCPA by Palmer.

36. The telephone calls Palmer placed or caused to be placed to Plaintiffs' cellular telephone numbers were made using an ATDS.

37. The subject calls were placed using a predictive dialer.

38. Many of the subject calls were placed using an artificial or pre-recorded voice message.

39. Palmer placed calls or caused calls to be placed to Plaintiffs at telephone numbers assigned to a cellular telephone service.

40. The telephone calls Palmer placed or caused to be placed to Plaintiffs were not placed for emergency purposes, as defined by TCPA § 227 (b)(1)(A)(i).

41. Palmer made or caused to be made unsolicited telephone calls to the wireless telephone numbers of Plaintiffs and the other members of the class using a pre-recorded voice and or using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

42. At the time Palmer placed or caused to be placed the phone calls alleged herein, Palmer did not have express consent to do so.

43. Palmer has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for any person within the United States "... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... ".

44. As a result of Palmer's illegal conduct, the members of the class suffered actual damages and, under § 227(b)(3)(B), and are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

45. Plaintiffs and class members are also entitled to, and do, seek injunctive relief prohibiting Palmer's violations of the TCPA in the future.

46. As clients on whose behalf the autodialed or prerecorded message call were made, Wal-Mart bore the responsibility for any violation of the TCPA and the calls are treated as if they themselves placed the call.

## CLASS ALLEGATIONS

47. Plaintiffs restate each of the allegations in all other paragraphs as if full stated herein.

48. Plaintiffs, individually and on behalf of all others similarly situated, bring the above claims on behalf of the following Classes.

49. The Palmer Class consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Palmer placed or caused to be placed a non-emergency telephone call (4) using an artificial or prerecorded voice (5) within 4 years of the complaint (6) where Palmer did not have express consent to call said cellular telephone number.

And the following sub-class:

> *Palmer Sub-Class*
> (1) All persons in the United States (2) to whose cellular telephone number (3) Palmer placed or caused to be placed a non-emergency telephone call (4) using an artificial or prerecorded voice (5) within 4 years of the complaint (6) who was not the person alleged to be a dishonest employee or shoplifter.

50. The Wal-Mart Class consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Palmer placed or caused to be placed a non-emergency telephone call (4) using an artificial or

prerecorded voice (5) within 4 years of the complaint (6) where Palmer did not have express consent to call said cellular telephone number and (7) Palmer was calling on behalf of Wal-Mart.

And the following sub-class:

*Wal-Mart Sub-Class*
(1) All persons in the United States (2) to whose cellular telephone number (3) Palmer placed or caused to be placed a non-emergency telephone call (4) using an artificial or prerecorded voice (5) within 4 years of the complaint (6) who was not the person alleged to be a dishonest employee or shoplifter and (7) Palmer was calling on behalf of Wal-Mart.

51. Palmer has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls; such calls are also an intrusion upon seclusion, invasion of privacy, diminish cellular battery life, and waste time.

52. Plaintiffs represent and are members of the Class and each sub-class. Excluded from the Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

53. Plaintiffs do not know the exact number of members in the Class, but based upon the size of Palmer's business, and the use of automated software to make the calls, Plaintiffs reasonably believe that the class members' number at a minimum hundreds, if not in the thousands.

54. Plaintiffs and all members of the Class have been harmed by Palmer's actions.

55. This Second Amended Class Action Complaint seeks money damages and injunctive relief.

56. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Palmer.

57. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

   a. Whether Palmer engaged or had a third party engage in a pattern of using an ATDS to place calls to cellular telephones;

   b. Whether Palmer's dialer or at the direction of Palmer had a third party's dialer deliver pre-recorded messages to cellular telephones;

   c. Whether Palmer's conduct was knowing or willful;

   d. Whether Palmer's actions violated the TCPA.

58. As persons who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, all within the meaning of the TCPA, Plaintiffs assert claims that are typical of the members of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and Plaintiffs do not have an interest that is antagonistic to any member of the Class.

59. Plaintiffs have retained counsel experienced in handling class action claims

involving violations of federal and state consumer protection statutes such as the TCPA.

**60.** A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Palmer to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Palmer is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

**61.** Palmer has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate. Moreover, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in their favor and favor of the Class, and against Defendants for:

1. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;
2. A declaration that Defendants used or caused to be used an ATDS to call the Plaintiffs;
3. An injunction requiring Defendants not to call any reassigned numbers or numbers that were skip-traced to ensure that Plaintiffs are not called if Plaintiffs obtain additional telephone numbers in the future;

4. An injunction requiring Defendants to file quarterly reports of third party audits with the Court on its system and procedures not to call any reassigned numbers or numbers that were skip-traced to ensure that Plaintiffs are not called in the future;

5. An injunction requiring Defendants not to call any reassigned numbers or numbers that were skip-traced to ensure that class members are not called if they obtain additional telephone numbers in the future;

6. An injunction requiring Defendants to file quarterly reports of third party audits with the Court on its system and procedures not to call any reassigned numbers or numbers that were skip-traced to ensure that class members are not called in the future;

7. An award of actual damages;

8. An award of statutory damages for Plaintiffs and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

9. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiffs and each Class member for each and every call that violated the TCPA;

10. An order certifying this action to be a proper class action pursuant to the Federal Rule of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes;

11. Attorney's fees, litigation expenses and costs of suit; and

12. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, demand trial by jury.

Dated: August 30, 2017                                                Respectfully submitted,


/s/ William Peerce Howard
William Peerce Howard  (FBN 0103330)
Amanda J. Allen (FBN 0098226)
The Consumer
Protection Firm
210-A South MacDill Ave.
Tampa, Florida 33609
(813) 500-1500
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

Keith J. Keogh (FBN 126335)
Amy L. Wells (*pro hac vice*)
KEOGH LAW, LTD
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
312-726-1092
312-726-1093 (fax)
Keith@KeoghLaw.com
AWells@KeoghLaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2017 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, who will send a notice of electronic filing to all counsel of record.

/s/ William Peerce Howard
William Peerce Howard  (FBN 0103330)