# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA - JACKSONVILLE DIVISION

| | |
|---|---|
| THOMAS COOK and EMANUEL BERMUDEZ, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> vs.<br><br>PALMER, REIFLER & ASSOCIATES, and WAL-MART STORES, INC.,<br><br>       Defendants. | Civil Action No.  3:16-cv-673-BJD-JRK<br><br>Judge:  Hon. Brian J. Davis<br><br>Magistrate Judge: Hon. James R. Klindt |

# PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF THE LITIGATION, MEDIATION AND
SETTLEMENT...............................................................................................................1

II. SUMMARY OF THE PROPOSED SETTLEMENT............................................................2

    A.  Class Definition ...........................................................................................2

    B.  Structure of the Settlement Amount ...........................................................3

    C.  Individual Settlement Class Member Benefits ............................................3

    D.  Compensation for the Class Representative .................................................4

    E.  Payment of Attorneys' Fees and Expenses ..................................................4

    F.  Release ..........................................................................................................4

III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ...............................5

    A.The Numerosity Element Is Satisfied .................................................................7

    B.The Commonality Element Is Satisfied................................................................8

    C.Plaintiff's Claims Are Typical of the Claims of the Settlement Class...............8

    D.Plaintiff and His Counsel Are Adequate Representatives...................................9

    E.The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ......10

V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL...............12

VII. MULTIPLE DISTRIBUTIONS FOR UNCASHED SETTLEMENT CHECKS ................17

VIII. THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING ................................17

IX. DEFENDANTS DO NOT OBJECT TO PRELIMINARY APPROVAL OF THE
SETTLEMENT CLASS.........................................................................................................18

XI. CONCLUSION.......................................................................................................................19

## I.   INTRODUCTION AND SUMMARY OF THE LITIGATION, MEDIATION AND SETTLEMENT

Plaintiff respectfully moves the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiff, Emanuel Bermudez, and Defendants Palmer, Riefler & Associates ("PRA"), and Walmart, Inc., which is attached as *Appendix 1*. Plaintiff claims arise under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

The "[v]oluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). Congress found that "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394, 2394-95 (codified at 47 U.S.C. § 227).

Accordingly, the TCPA makes it unlawful to make any call using an ATDS or an artificial or prerecorded voice to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA creates a private right of action for persons affected by violations and provides for statutory damages in the amount of $500 per violation, which the Court may treble if a violation is willful. 47 U.S.C. §227(b)(3).

Pursuant to the TCPA, Plaintiff alleged he received prerecorded robocalls that PRA placed on behalf of Walmart to collect monies allegedly due to Walmart as a result of shoplifting even though Plaintiff was not the person that Defendants were trying to reach. Plaintiff contends that these prerecorded calls violated the TCPA because they were made to third parties that were designated as wrong numbers or made after a request to stop calling such that there would not be consent for these calls. Defendants vigorously deny these allegations. The proposed Settlement would resolve all claims in this action.[1]

This class action was filed on May 31, 2016. ECF No. 1. This Settlement was not reached until after extensive discovery, two rounds of class certification briefing, Walmart's

---

[1] Capitalized terms in this motion are meant to have the same meaning as in the Settlement Agreement, unless otherwise noted.

motion for summary judgment, expert discovery and *Daubert* motions relating to those experts and not until two mediations a year apart with the second mediation occurring in September 2018[2]. Even then, it took several months of negotiations to work out the terms of the class settlement.

Under the Agreement, Defendants will pay Three Million, Five Hundred Thousand Dollars ($3,500,000.00) into a non-reversionary Settlement Fund. The Settlement Fund will be divided *pro rata* among all Settlement Class Members who submit a timely claim, after payment of the costs of notice and administration and the court-approved attorneys' fee and class representative incentive awards. None of the Settlement Fund will revert back to Defendants.

All told, this settlement provides the Settlement Class with a significant portion of the statutory damages available under TCPA and, on a per-class member basis, it exceeds several other TCPA class action settlements approved in this District. Given the hurdles facing the Settlement Class in this litigation, the results achieved are reasonable in light of the defenses.

Plaintiff therefore moves to: (a) conditionally certify the Settlement Class; (b) appoint Plaintiff as class representative; (c) appoint Keith Keogh and Amy Wells of Keogh Law, Ltd. and William Howard and Amanda Allen as class counsel, (d) enter an order granting preliminary approval of the Settlement and plan for giving notice of it to the Settlement Class, and setting this matter for a fairness hearing; and (e) grant such additional relief as deemed just.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed Settlement follow:

**A.      Class Definition.** The Settlement Class[3] is defined as follows:

---

[2] On September 29, 2017, the Parties unsuccessfully participated in private mediation with mediator Mark A. Buckstein pursuant to Court order. ECF No. 53. Almost a year later on September 20, 2018, the Parties participated in a second private mediation with mediator Hesha Abrams pursuant to Court order. ECF No. 164. As a result of that mediation session, the Parties reached an agreement to settle the Action.

[3] The following are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) PRA, as well as any parent, subsidiary, or affiliate of PRA, and the officers, directors, agents, servants, or employees of PRA; (3) Walmart, as well as any parent, subsidiary, or affiliate of Walmart, and the officers, directors, agents, servants, or employees of Walmart; (4) any of the Released Parties; (5) the immediate families of any such person(s); (6) any Settlement Class Member who has timely opted out of this proceeding; and (7) Plaintiff's Counsel, their employees, and their immediate family.

(i)     **Wrong-Number Class**:  (1) All persons in the United States (2) to whose cellular telephone number (3) PRA placed or caused to be placed a non-emergency telephone call (4) on behalf of Walmart (5) using an artificial or prerecorded voice (6) within 4 years of the complaint (7) where PRA called the wrong number, such as where PRA listed that number on its Wrong Number List.

(ii)    **Call after Wrong-Number Notation Class**:  (1) All persons in the United States (2) to whose cellular telephone number (3) PRA placed or caused to be placed a non-emergency telephone call (4) on behalf of Walmart (5) using an artificial or prerecorded voice (6) within 4 years of the complaint (7) where PRA called the wrong number after it was already informed it had the wrong number, such as where the number was previously added to PRA's Wrong-Number List.

(iii)   **DNC Class**:  (1) All persons in the United States (2) to whose cellular telephone number (3) PRA placed or caused to be placed a non-emergency telephone call (4) on behalf of Walmart (5) using an artificial or prerecorded voice (6) within 4 years of the complaint (7) where PRA called after receiving a do not call request, such as where the number was previously added to PRA's Do Not Call List.

Plaintiff estimates there are 31,748 unique cellular telephone who had a wrong number notation or Do-Not-Call notation as defined above.  Specifically, there were 20,489 unique numbers for the Wrong Number Class, 9,977 unique numbers for the Call after Wrong Number Notation Class and 1,282 unique numbers for DNC Class.  Because some of the those unique cellular numbers fit into two or three of the above classes, the total number of unique cellular numbers after combing the classes and after de-duplication equals 23,083.

     **B.**     **Structure of the Settlement Amount.** The Agreement provides Defendants will pay Three Million, Five Hundred Thousand Dollars ($3,500,000.00) into a non-reversionary Settlement Fund.  *Appendix 1* at ¶40.

     **C.**     **Individual Settlement Class Member Benefits.** A Settlement Class Member who submits a timely claim form will receive a *pro rata* share of the net settlement proceeds after payment of the cost of sending notice of the Settlement to the Settlement Class, settlement administration expenses, Court approved attorneys' fee and expense award, and any class

representative incentive awarded by this Court.   Plaintiff estimates[4] the pro rata share for each class member who submits a valid claim would equal $1,900 at a five percent claim rate and $957 at a ten percent claim rate.

      **D.**    **Compensation for the Class Representative.** Subject to Court approval, Plaintiff shall apply for an incentive award not to exceed twenty thousand dollars ($20,000).[5] The Agreement does not contain any "clear sailing" provision as to incentive award demonstrating that the amount now sought was not a factor in agreeing to this Agreement.  As will be explained in Plaintiff's final approval motion, Mr. Bermudez substantively participated in this case including communicating with counsel, participating in discovery, being deposed and attending mediation.  In fact, Mr. Bermudez was fired for taking the day off to attend the first mediation in this case.  Finally, Mr. Bermudez turned down substantial individual settlement offers to fight for the class at a time when his co-plaintiff, Mr. Cook accepted an individual settlement offer.

      **E.**    **Payment of Attorneys' Fees and Expenses.** Plaintiff's counsel will petition the Court for an award of attorneys' fees of one-third of the Maximum Settlement Amount, plus expenses, and the notice to the Settlement Class will inform the Settlement Class of such and counsel's soon to be filed fee petition will be posted on the settlement website.  Like the incentive award, the Agreement does not provide any "clear sailing" provision regarding attorney fees or expenses.

      **F.**    **Release.** In exchange for the relief described above, the release is applicable to all Settlement Class Members and releases any and all claims, rights, causes of action, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Agreement), liens, charges, complaints, causes of action, obligations, or liability of any and every kind that were asserted in the Action, or that could have been asserted but were not asserted in the Action, or in any other court or forum, whether known or unknown, on the basis of, connected with, arising out of, or related in whole

---

[4] The estimate is based on administration costs at $68,000, requested attorney fees of one third ($1,166,550) and expenses of $34,500 and the requested incentive award of $20,000, which would leave a Settlement Fund balance of $2,210,932 to be distributed to the claimants.

[5] This is consistent with incentive awards in other cases. *See*, *e.g.*, *Cooper v. NelNet, Inc.*, 14-cv-314-RBD-DAB, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award in TCPA case); *Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, *25-*26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive awards), *citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff).

or in part to any or all of the alleged acts, omissions, facts, matters, transactions, circumstances, and occurrences that were directly or indirectly alleged, asserted, described, set forth, or referred to in the Action, whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local, including but not limited to claims relating to the TCPA and other laws involving the use of automatic telephone dialing system and/or the use of artificial or prerecorded voice (the "Released Claims").  PRA and Walmart do not release any claims they may have against each other arising from or relating to this Action. Releasing Settlement Class Members do not include claims for any calls other than the calls PRA made relating to Walmart.  *See Appendix 1* at §XIII.

### III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiff asserts that prior to granting preliminary approval of a class action settlement, the Court should confirm that the proposed settlement class is a proper class for settlement purposes. *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1313-14 (S.D. Fla. 2005) (internal quotations omitted).

Class certification is appropriate if the proposed class meets the elements of Federal Rule 23(a), and one element of Federal Rule 23(b). *See Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 693 (S.D. Fla. 2013). The elements of Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4); *see also Collins*, 290 F.R.D. at 693. The element of Rule 23(b) at issue here requires that common questions of law or fact predominate, and that a class action be a superior method of resolving the claims at issue. Fed. R. Civ. P. 23(b)(3); *see also Collins*, 290 F.R.D. at 693. However, because class certification is being proposed as part of a settlement, the Rule 23(b)(3) inquiry is relaxed as it relates to case manageability because the settlement obviates the need for a trial. *See Amchem*, 521 U.S. at 620.

TCPA cases are routinely certified for class treatment because, as here, the claims of all proposed class members arise from the exact same conduct. *See CE Design, Ltd. v. King Architectural Metals, Inc.*, 271 F.R.D. 595, 602 (N.D. Ill. 2010) ("class actions have routinely been certified in TCPA cases"), *vacated on other grounds*, 637 F.3d 721 (7th Cir. 2011). Indeed,

5

"[c]lass certification is normal in litigation under §227 [of the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. & Assoc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

The "large number of claims, along with the  relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating" claims under TCPA. *C-Mart, Inc. v. Metro. Life Ins. Co*., 299 F.R.D. 679, 691 (S.D. Fla. 2014), *quoting Hicks v. Client Servs., Inc.,* 2008 U.S. Dist. LEXIS 101129, 2008 WL 5479111, *10 (S.D. Fla. Dec. 11, 2008). "Class certification is normal in litigation under [the TCPA], because the main questions… are common to all recipients." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,* 821 F.3d 992, 998 (8th Cir. 2016), *quoting Ira Holtzman, C.P.A. & Assoc., Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *also see Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1045 (9th Cir. 2012) (affirming class certification). Not surprisingly then, at least fifty courts had certified TCPA cases for class action treatment by 2010. *See Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 584 n. 5 (Mo. Ct. App. 2010) (collecting cases).

Courts have also certificated classes in  "wrong number" TCPA cases. *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018)(certified a wrong number TCPA class in the face of defendant's objection that the "wrong number" notations in its records did not necessarily mean what they said); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016)( certified a wrong number class and rejected the argument "that every record marked as a wrong number may not actually have been a wrong number," finding that "these matters can be efficiently addressed" and "that, at this point in the litigation, while it is not required prior to certification, the Plaintiff's proposed method of identifying potential class members is adequate for class certification."); *Lavigne v. First Cmty. Bancshares, Inc.*, 2018 U.S. Dist. LEXIS 94055, at *18-19 (D.N.M. June 5, 2018) (certifying wrong number class despite defendants' argument "that a call could be coded 'Bad/Wrong Number' for many reasons" because "a number of courts have rejected this theory in 'Wrong Number' cases, under similar factual circumstances, at the class certification stage"); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 301-02 (N.D. Cal. 2017) (certifying wrong number class, reasoning "several district courts have deemed commonality and predominance satisfied in TCPA cases despite the possibility that a substantial

proportion of the phone numbers marked as 'wrong number' in defendant's call log databases 'may not have actually been a wrong number'"); *Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303, 308, 311 (S.D. Cal. 2015) (certifying wrong number class based on defendant's records, holding ascertainability satisfied "because class members likely can be determined by objective criteria based on defendant's business records and the class members will likely be able to identify whether they received prerecorded calls from defendant," further holding predominance satisfied as class definition was limited to wrong numbers, which plaintiff correctly argued is "evidence suggesting defendant did not obtain express consent"); *see also Reid v. I.C. Sys.*, 2017 U.S. Dist. LEXIS 43770, *4-5 (D. Ariz. 2017) (certifying settlement class of persons "whose cellular telephone number was . . . coded as a wrong number" in defendant's records); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1039 (S.D. Cal. 2015) (certifying settlement class defined in terms of persons called "without consent" and "persons whose cellular telephone numbers were marked with a 'wrong number' code in Defendant's database").

On the other hand, Defendants have pointed out that some courts have denied class certification in TCPA wrong number cases as those courts held that individual issues of consent would predominate. *See, i.e., Tillman v. Ally Fin. Inc.* 2017 U.S. Dist. LEXIS 216694 (M.D. Fla. 2017).

In any event, the Settlement Class here satisfies Rule 23 and thus, as in the above cases, preliminarily approval of the Settlement Class is proper.

## A.    The Numerosity Element Is Satisfied

The first Rule 23(a) element requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Collins*, 290 F.R.D. at 694. To meet this element, "plaintiffs need not prove the exact size of the proposed class, but rather need demonstrate only that the number is exceedingly large, and joinder impracticable." *Id.* (citations omitted). "As a general rule, a group of more than forty satisfies the numerosity requirement." *Id.*

Here, each class satisfies the numerosity requirement.  There are 20,489 unique numbers for the Wrong Number Class, 9,977 unique numbers for the Call after Wrong Number Notation Class and 1,282 unique numbers for DNC Class.  Once again, because some of the those unique cellular numbers fit into two or three of the above classes, the total number of unique cellular numbers after combining all of the numbers and after de-duplication equals 23,083.  Obviously,

it would be impracticable to join tens of thousands of people as parties in one lawsuit. Accordingly, the Settlement Class meets the numerosity element.

### B.   The Commonality Element Is Satisfied

The second Rule 23(a) element requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This element is met if there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001); *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) (finding that the commonality requirement is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members") (internal quotation omitted).   This is another "low hurdle."   *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009).

This element is met because all Settlement Class Members share the common issues of whether the prerecorded calls were made without consent. Therefore, the commonality element is met. Commonality is satisfied here, as it has been in numerous other TCPA cases.   *See Palm Beach Golf*, 311 F.R.D. at 699 ("facts necessary to establish liability relate to Defendant's common course of conduct"); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014) (holding in TCPA case "the legal questions that the instant matter presents will be common to all class members"); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) ("Whether the provision of a phone number on admissions paperwork equates to express consent is a question common to all class members, because . . . all class members will prevail or lose together, making this another common issue to the class.").

### C.   Plaintiff's Claims Are Typical of the Claims of the Settlement Class

The third Rule 23(a) element requires that the class representative's claims be typical of the claims of the putative class members. Fed. R. Civ. P. 23(a)(3). "The Supreme Court has recognized '[t]he commonality and typicality requirements of Rule 23(a) tend to merge.'" *Collins*, 290 F.R.D. at 697 (citation omitted). "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted). A plaintiff's claim is typical of the class members' claims if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). In fact, the typicality requirement may be satisfied despite substantial

factual differences when there is a strong similarity of legal theories. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009); *see also Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (finding that named representative need only share the same "essential characteristics" of the larger class) (*overruled on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457 (2006)). Simply put, when the same unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

In this case, Plaintiff was subjected to the same pattern or practice as every other class member—*i.e.* PRA used artificial and/or pre-recorded voice to place debt collection robocalls on behalf of Walmart to cellular telephone numbers seeking third parties and where PRA's business records confirmed it called a wrong number or was listed as a do not call request. And Plaintiff's claim, like the claim of every other class member, is based on a single legal theory—*i.e.* that Defendants' conduct violated 47 U.S.C. §227(b)(1)(A)(iii). Accordingly, Mr. Bermudez meets the typicality requirement.

**D.      Plaintiff and His Counsel Are Adequate Representatives**

The fourth and final Rule 23(a) element requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates: (1) that the class representative possess no interests antagonistic to the settlement class, and (2) competent class counsel. *See Fabricant*, 202 F.R.D. at 314-15 (*citing Kirkpatrick v. J.C. Bradford & Co*., 827 F.2d 718, 726-28 (11th Cir. 1987)).

Here, Plaintiff's and the Settlement Class Members' interests are aligned because they both stand to recover statutory damages if Plaintiff proves PRA violated the TCPA and Walmart is either directly or vicariously liable for PRA's calls.  *See* Appendix 2 excerpts of Bermudez's deposition.[6] Moreover, Plaintiff is represented by counsel with extensive experience litigating TCPA claims and class actions under the TCPA.  *See Appendix 3 Declaration of Keith Keogh* at ¶¶ 13-23; *Appendix 4 Declaration of William Howard* at ¶¶3, 11-12. Thus, the adequacy element is met and Plaintiff and his counsel should be appointed as Class Representative and Class Counsel for settlement purposes pursuant to Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

---

[6] "I am representing a larger number of other people at this time who are dealing with the same situation that I am." p. 37:6-8.  "This case is about myself and many other people receiving phone calls from PRA in regards to wrong numbers or being requested not to receive calls from PRA despite that they continuously call back." P 56:7-10.

**E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

Once the four elements of subsection (a) are met, Rule 23 also requires that the case meet one of the three elements of subsection (b). Rule 23(b)(3) provides that a class action can be maintained if the questions of law or fact common to class members predominate over any questions affecting only individuals, and if a class action is a superior method for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3).

The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700 (internal quotations omitted); *Collins*, 290 F.R.D. at 699 (common issues predominate if their resolution has a "direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'") (citation omitted). The common questions squarely predominate here.

Here, the common questions presented directly affect the class members' ability to establish liability and obtain relief in that proving whether Walmart is liable for PRA's calls and whether PRA had consent establish liability for the class.

Thus, as is often true in TCPA cases, "there are no prickly individualized questions" that could predominate this action. *Manno*, 289 F.R.D. at 690. Instead, "the facts necessary to establish [TCPA] liability relate to Defendant's common course of conduct and the transmissions of the [calls], and not to issues with individual class members." *Palm Beach Golf*, 311 F.R.D. at 699 (finding predominance satisfied in a TCPA case).

Finally, common issues predominate with respect to the issue of prior express consent, notwithstanding any speculative or hypothetical argument to the contrary. As *Abdeljalil* held in certifying a wrong number TCPA class, any speculative or hypothetical individualized issues regarding "prior express consent" do not defeat predominance where the class can be identified by defendant's records. 306 F.R.D. at 311 ("[P]laintiff contends that the issues surrounding consent are subject to common proof because the proposed search [of call records for 'wrong number' notations] will identify persons called by defendant's agent who were third parties. . . . This Court agrees with plaintiff."); *see also Johnson*, 315 F.R.D. at 502-03 (holding predominance satisfied by wrong number TCPA class, finding that any possible individual issues

10

"can be efficiently addressed").[7]

A class action is also superior to any other method available to fairly and efficiently adjudicate the Settlement Class Members' claims. *See Bush v. Calloway Consol. Group River City, Inc.*, 2012 U.S. Dist. LEXIS 40450, \*33 (M.D. Fla. Mar. 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions…"). Without a class action, members of the Settlement Class could not feasibly resolve their claims. Statutory damages per claim are limited to $500 and the TCPA does not provide attorney fees, which is insufficient to motivate individual class members to personally vindicate their rights. Thus, individual litigation is infeasible, and a Settlement Class is plainly a superior method of adjudication. *See In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 700 (S.D. Fla. 2004) ("a class action is particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (internal citations omitted); *see also Amchem,* 521 U.S. at 615. Even if individual litigation was feasible, however, a class action is still superior because it would be judicially inefficient to have multiple courts consider and adjudicate the same factual, liability and statutory damage issues this case presents. *See Agan*, 222 F.R.D. at 700 ("increased efficiency" can also render class action superior), *quoting Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1359 (11th Cir. 2002).

Although this case meets the superiority requirement as it is ordinarily applied, it must be noted that the superiority analysis is relaxed here because class certification is being proposed as part of a settlement, and thus trial management considerations are not a factor. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).

Finally, in addition to the above considerations, the Supreme Court has specifically approved of class actions that seek statutory damages. *See Shady Grove Orthopedic Associates,*

---

[7] *See also Cordoba*, 320 F.R.D. at 602 ("Dish's claim that the putative class list contains 'hundreds' or 'a multitude' of non-actionable calls, is not supported by evidence. While there are potentially a number of individual issues, these issues appear to apply to only a small number of class members and are straightforward. These minor, peripheral issues do not defeat the predominance[.]") (quoting *Krakauer*, 311 F.R.D. at 399); *Mims v. Stewart Title Guaranty Co.,* 590 F.3d 298, 308 (5th Cir. 2009) ("Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct.").

*P.A., v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010). In *Shady Grove*, the Court considered whether a New York state law prohibiting class actions seeking statutory minimum damages precludes a federal court from considering Rule 23 class action status. *Id.* at 1436. The Court held a plaintiff may pursue a class action seeking statutory damages. *Id.* at 1448.

The portion of Justice Scalia's opinion joined by three other justices found it "obvious" that plaintiffs may aggregate multiple claims for statutory damages in a class action. *Id.* at 1443. Such Rules "neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed." *Id.* Thus, in responding to the defendant's argument that aggregation of statutory penalties improperly transforms a dispute over $500 into a suit for $5 million, Justice Scalia noted:

> [A]ggregate liability, however, does not depend on whether the suit proceeds as a class action. Each of the 1,000-plus members of the putative class could (as [the defendant] acknowledges) bring a freestanding suit asserting his individual claim. It is undoubtedly true that some plaintiffs who would not bring individual suits for the relatively small sums involved will choose to join a class action. That has no bearing, however, on [the defendant's] or the plaintiffs' legal rights. The likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of "incidental effec[t]" we have long held does not violate §2072(b).

*Id.* Justice Stevens' concurrence provides a fifth vote for this holding. *Id.* at 1459, n.18.[8] In short, the proposed Settlement Class meets the requirements of Rule 23.

## V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule 23 provides that "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* Carlos F. Herr, *Annotated Manual for Complex Litigation,* § 21.632 (4th ed. 2004).

The first step is a preliminary, pre-notification determination whether the settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV,

---

[8] Responding to Justice Ginsburg's argument that class certification would "transform a $500 case into a $5,000,000 award," Justice Stevens notes: "[C]lass certification would transform 10,000 $500 cases into one $5,000,000 case. It may be that without class certification, not all of the potential plaintiffs would bring their cases. But that is true of any procedural vehicle; without a lower filing fee, a conveniently located courthouse, easy-to-use federal procedural rules, or many other features of the federal courts, many plaintiffs would not sue." *Id.* at 1459 n.18.

2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This is not a fairness determination; its purpose, rather, is to ascertain whether there is grounds to notify the class members of the settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling Parties. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the Parties. *See Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *9 (11th Cir. Dec. 2, 2015) (unpublished) ("a district court may also rely upon the judgment of experienced counsel for the parties. Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"), *quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Warren*, 693 F.Supp. at 1054 ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Ultimately, a class action settlement should be approved if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now*, 2002 WL 1162422 at *4. When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors

settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In considering whether the proposed Settlement is "fair, adequate, and reasonable," the following factors are often considered: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 1329. Finally, in considering the preliminary approval issue, courts need not "reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

Here, the proposed Settlement is fair, adequate and reasonable, and well "within the range of possible approval." This is demonstrated by the amount of monetary relief made available to the Settlement Class, and the fact that the agreement was the result of hard fought, arms' length negotiations by experienced counsel conducted through a seasoned third party mediator.

The monetary relief secured on behalf of the Settlement Class is substantial. Each Settlement Class Member who submits a timely claim form will receive a pro rata share of the $3,500,000 Settlement Fund. As noted above, Plaintiff estimates[9] the pro rata share for each class member who submits a valid claim would equal $1,900 at a five percent claim rate and $957 at a ten percent claim rate.

This compares to a potential statutory damages recovery of $500 per call allowed by TCPA (and up to treble if willful). The monetary relief is even more favorable after considering that if Walmart was not liable for PRA's calls, PRA would not be able to pay a class judgment due to its financial condition or if the certification was denied.

Finally, the monetary relief is also reasonable  as compared to  other TCPA class settlements approved in this district and elsewhere *See, Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-2414-T-23TBM (M.D. Fla. Aug. 25, 2014) (class claimants to receive $57.50-$75.00 gift card); *In re Enhanced Recovery Company, LLC Telephone Consumer Protection Act*

---

[9]  The estimate is based on administration costs at $68,000, requested attorney fees of one third and expenses of $34,500 and the requested incentive award of $20,000, which would leave a Settlement Fund balance of $2,210,932 to be distributed to the claimants.

*Litigation*, Case No. 6:13-MD-2398-orl-37GJK (M.D. Fl.)(class claimants to receive injunctive relief and no monetary recovery).[10]

The Settlement is the product of substantial and active arms' length negotiations that took place over years. Based on the discovery undertaken, including Plaintiff's expert report, Plaintiff's counsel is confident in the strength of the claims alleged in this action and Plaintiff's chance of success at the class certification stage and at trial. Nevertheless, litigation is inherently unpredictable, Defendants are represented by competent and formidable counsel, Plaintiff must clear a number of major hurdles to secure relief for the class in the absence of settlement (including contested class certification proceedings and trial), and the outcomes of those proceedings are never guaranteed.[11]

Indeed, Plaintiff and the Settlement Class Members face significant risks. This includes the possibility that the Court may deny a contested class certification motion and, of course, the possibility that the Court grants Walmart's motion for summary judgment or the fact finder concludes that Walmart is not liable for calls made by PRA.

In the end, when the strengths of the case are weighed against the legal and factual obstacles present, and the complexity of class action practice, there should be no doubt that the proposed Settlement is in the best interest of Settlement Class Members.[12] And, given the value of this Settlement – Plaintiff expects no significant opposition to it by any Settlement Class Member. In its totality, this Settlement is well within the range of reasonableness and should be preliminarily approved by this Court.

---

[10] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

[11] *See Appendix 3* (Decl. of Keith J. Keogh) at ¶9-10.

[12] *See Appendix 3* (Decl. of Keith J. Keogh) at ¶11.

## VI. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

The Agreement includes notice procedures designed to directly reach each member of the class as is practicable. *Appendix 1* at §VII. Because the names and addresses associated with the unique cellular telephone numbers identified are not known, the Settlement Agreement provides Class Counsel will subpoena Verizon Wireless, T-Mobile, AT&T, Sprint, Virgin Mobile, Straight Talk Wireless, Boost Mobile, Metro PCS, Cricket, and U.S. Cellular for contact information missing from the PRA WN/DNC List for the purpose of providing the best notice practicable to those members of the Settlement Class.  For numbers that did not return contact information for class members, the Claims Administrator shall perform reverse look up using third party databases.

Plaintiff's counsel have successfully undertaken this process in other cases.  *See Martin v. Global Tel\*Link Corp.*, 2017 U.S. Dist. LEXIS 53899, *8-9 (C.D. Cal. 2017) (identifying over one million users and subscribers by subpoenaing the telecom providers).

After the contact information is obtained, the Claims Administrator shall cause a notice (*Appendix 1* at Exhibit 3) to be sent via First Class mail to every Settlement Class Member for which address information is available, to advise them about the Settlement and direct them to the Website where they can obtain additional information about it, including how to comment on the settlement or opt out of it, and how to make a claim. *Appendix 1* at §VII. The Settlement Agreement allows Settlement Class Members to make claims via mail, on-line or even via telephone by using their Settlement Class Member id that is provided to them on the direct notice. *Id.* at §VII.3.C.

Second, the Claims Administrator will establish a settlement website that supplements the mail notice with comprehensive information about the Settlement (*Appendix 1* at §VII ¶3B) a claim form that Settlement Class Members can use to make a claim and a procedure for filing claims online (*Appendix 1* at Exhibit 1 and 5), plus a copy of the latest Complaint, the Agreement, the Preliminary Settlement Approval Order for the Settlement Class Members to review. *Id*. The notice posted on the site provides Settlement Class Members with a detailed explanation of their options, to enable them to make an informed decision. (*Appendix 1* at Exhibit 5). The Settlement Administrator will also establish and oversee a toll-free phone number for Settlement Class Members to contact to ask questions and submit claims via the phone. *Appendix 1* at §VII.3.C.

A mailed notice combined with a Website for further information is a commonly approved method for giving notice in class settlements. *See*, *e.g.*, *See Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *15 (11th Cir. Dec. 2, 2015) (unpublished) ("all material facts were available to class members because a full copy of the settlement agreement, and the release, were available on a website referenced in the Notice."); *Collins v. Erin Capital Management, LLC*, No. 12-cv-22839-CMA (S.D. Fla. Dec. 20, 2013) at ECF No. 133, ¶ 5; *Guarisma v. Adcahb Medical Coverages, Inc.*, No. 13-cv-21016-FAM (S.D. Fla. Mar. 2, 2015) at ECF No. 91, ¶11; *Soto v. The Gallup Organization, Inc.*, No. 13-cv-61747-MGC (S.D. Fla. June 6, 2015) at ECF No. 79, ¶9; *De Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670-DPG (S.D. Fla. Feb. 10, 2015) at ECF No. 77, ¶ 11; *Curry v. AvMed, Inc.*, No. 10-cv-24513, 2014 U.S. Dist. LEXIS 48485 at *3 (S.D. Fla. Feb. 28, 2014); *Cooper v. Nelnet, Inc.*, 14-cv-00314-RBD (M.D. Fla. Feb. 26, 2015) at ECF No. 72, ¶10; and *Legg v. E-Z Rent A Car, Inc.*, No. 14-cv-01716-PGB (M.D. Fla. May 28, 2015) at ECF No. 64, ¶10.

Third, Defendants will serve, at their own expense, upon the Attorneys General of each of the fifty United States and the Attorney General of the United States notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten (10) days after the proposed Settlement is filed. *See Appendix 1* at §VIII.1.  In short, the notice plan here should be approved.

## VII. MULTIPLE DISTRIBUTIONS FOR UNCASHED SETTLEMENT CHECKS

Class Counsel intend to distribute all proceeds claimed by Settlement Class Members. The Settlement Agreement provides that if there are fund from uncashed checks after the expiration date of the checks to the class members who claimed in, there will be a second distribution where such remaining monies will be distributed on a *pro rata* basis to those Settlement Class Members who cashed his or her initial Settlement Award check (the "Subsequent Distribution").

In the event the costs of preparing, transmitting and administering such subsequent payments are not feasible and practical to make individual distributions, Class Counsel and counsel for Walmart shall file recommendations with the Court for distribution of the residual funds.  Under no circumstances will such funds be returned to Defendants.

## VIII. THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING

After adequate notice is given to the Settlement Class and the government as required by 28 U.S.C. §1715, a fairness hearing should be held for the Court to confirm that the Settlement is

fair, reasonable and adequate. *See*, *e.g.*, *Bennett*, 737 F.2d at 985; *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011).

## IX. DEFENDANTS DO NOT OBJECT TO PRELIMINARY APPROVAL OF THE SETTLEMENT CLASS

Defendants disagree Plaintiff can satisfy the elements for a litigation class under Rule 23 or that certification of any class would be appropriate here if the parties proceeded with litigation.  Indeed, Defendants have vigorously opposed the prior motions for class certification motion by Plaintiff.  Nonetheless, following extensive negotiations, Defendants have agreed to the terms of the Settlement and does not object to the certification of the Settlement Class for settlement purposes only.

## X. SUGGESTED SCHEDULE

Based on the events that need to take place between the granting of preliminary approval and final approval that are described in the proposed preliminary approval order (Exhibit 4 to *Appendix 1*), including obtaining contact information from the telephone companies, Plaintiff proposes the general scheduling outline below for evaluating and concluding this Settlement.

| _____, 2019 [75 days after the Preliminary Approval Date] | Deadline for notice to be provided to the Settlement Class Members<br><br>Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Costs and Service Awards |
|---|---|
| _____, 2019 [135 days after the Preliminary Approval] | Deadline for Settlement Class Members to file any objection, file any notice of their or their counsel's intent to appear at the fairness hearing and the bases therefor, or to submit requests for exclusion (Opt-Out and Objection Deadline) |
| _____, 2019 [135 days after Preliminary Approval] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| _____, 2019 [165 days after deadline for claims/objections/opt outs but at least not less than 14 days before the Fairness Hearing] | Deadline for Parties to file the following:<br>(1)   List of persons who made timely and proper requests for exclusion (under seal);<br>(2)   Proof of Class Notice; and<br>(3)   Motion and memorandum in support of final approval and related matter, including responses to any objections. |

| | |
|---|---|
| **_____, 2019 at _____ _.m.** [No earlier than 179 days after the Preliminary Approval] | Fairness Hearing |

The reason Plaintiff proposes 75 days to send notice to the Settlement Class is due to the time needed for the subpoena[13] procedure to identify Settlement Class Members set forth above, including the inevitable initial objections of the telecom providers.

## XI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court (1) certify the proposed settlement class, (2) appoint Mr. Bermudez as class representative, (3) appoint Mr. G Bermudez' attorneys as class counsel, (4) preliminarily approve the proposed settlement and notice plan, and set the matter for a fairness hearing, by entering the proposed order attached as Exhibit 4 to *Appendix 1*, and (5) grant such other and further relief as deemed just.


Respectfully Submitted,

/s/ Keith J. Keogh
Keith J. Keogh (FBN:0126335)
Amy Wells, Pro Hac Vice
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.726.1092 (Main)
Keith@KeoghLaw.com
AWells@KeoghLaw.com

William P. Howard, Esq. (FBN: 0103330)
Amanda J. Allen (FBN 098288)
THE CONSUMER PROTECTION FIRM, PLLC
4030 Henderson Blvd.
Tampa, Florida 33629
Telephone: (813) 500-1500
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

  Attorneys for Plaintiff, Emanuel Bermudez

---

[13] Plaintiff will simultaneously serve the subpoena with filing of this motion on December 19, 2018.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 19, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Keith J. Keogh*
Keith J. Keogh, Esq
.

20