IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| THOMAS COOK and EMANUEL BERMUDEZ, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 3:16-cv-673-BJD-JRK |
| v. | ) ) | District Judge Brian J. Davis |
| PALMER, REIFLER & ASSOCIATES, and WAL-MART STORES, INC., | ) ) ) ) | Magistrate Judge James R. Klindt |
| Defendants. | ) | |

**MOTION TO COMPEL THIRD-PARTY STRAIGHT TALK WIRELESS TO COMPLY WITH SUBPOENA TO PRODUCE DOCUMENTS OR TO SHOW CAUSE FOR FAILURE TO COMPLY WITH SUBPOEANA**

Pursuant to Rules 45(d)(2)(B)(i) and 45(g) of the Federal Rules, Plaintiff moves the Court to compel third-party Straight Talk Wireless, aka TracFone Wireless, Inc. ("TracFone"), to produce documents responsive to Plaintiff's subpoena. There is no dispute that at least 2,245 numbers in the Class are TracFone subscribers . There is also no dispute that TracFone has access to the information Plaintiff requested. And although TracFone has not raised any written objections (timely or otherwise), TracFone refuses to comply unless Plaintiff agrees to pay TracFone $3,000.[1] TracFone is the *only* carrier demanding such a payout for providing information that will allow notice to be provided to its customers.

TracFone should be compelled to comply with the subpoena without charge because (1) TracFone's demand far exceeds the norm for compliance, including by carriers in TCPA class cases; and (2) TracFone failed to raise any objection to the subpoena, waiving its right to do so.

---

[1] TracFone first demanded $56,125 to comply with the subpoena. **Exh. 1** at ¶ 7. Then TracFone contended it could only produce the requested information by a manual process. *Id.* at ¶ 8.

78215

The extent of what is being requested from TracFone is very basic contact information for 2,245 of its customers. This will take the form 2,245 line entries (one for each mobile number that subscribed to TracFone's service at the time in question), which will include:

**(1) First & last name  (2) Mailing address and (3) E-mail address**

Notably, this information is requested via electronic production. Hence, TracFone will incur no printing or copying time or costs. Simply put, TracFone's argument that a 12 hour, $3,000 "review" is needed is unreasonable. It is undisputed that TracFone identified the 2,245 numbers using an automated query. TracFone can use that same query to obtain the contact information above. Further, even if a "review" were needed (it is not), such a review would take minutes, not hours.

## I.     RELEVANT FACTS & TIMELINE

1.    On February 8, 2019, Plaintiff submitted for service to TracFone a subpoena to produce documents. **Exh. 1-A**.

2.    The subpoena directed TracFone to produce responsive data by March 4, 2019. *See id.* at 2.[2] The subpoena further provided that compliance shall be in Tampa, Florida. *Id.*

3.    The subpoena was served on February 19, 2019. **Exh. 1-B**.

4.    Accordingly, any written objections were required to be made on or before March 4, 2019. Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.") At the date of this filing, TracFone has made no written objections to the subpoena.

5.    The subpoena seeks the following information, which is necessary to identify, and provide notice to, Class members:

---

[2] Pinpoint citations refer to the pagination in accordance with the ECF numbering for the Court's convenience, and therefore include the cover page.

78215

> For each telephone numbers listed in column A of the attached spreadsheet, please identify the (1) name, (2) address, and (3) email address of the subscriber to that telephone number on the date stated in column B by appending additional columns to the attached spreadsheet.
>
> If you are unwilling to provide this information, produce the underlying account data in electronic format (less any financial information) and allow us to do so.
>
> All production should be made in electronic format (preferably in csv format on the enclosed spreadsheet). Do no produce as paper or scanned documents.

**Exh. 1-A** at 5. The spreadsheet attached to the subpoena includes two columns, the first being all mobile numbers called, and the second being the date the call was made to that number. **Exh. 1** at ¶ 4 (Decl. of Class Counsel). There is no undue burden for a carrier to produce this basic information about its subscribers, which is indisputably maintained in TracFone's database. This information is necessary so these individuals can be advised of their rights in this case.

6. Since February 25, 2019 Plaintiff's counsel has conferred in good faith with representatives of TracFone, including TracFone's counsel. This conferral has included several telephone conferrals. **Exh. 1** at ¶ 5.

7. On March 6, 2019, following one such telephone conferral, TracFone produced the attached document titled "CALEA LAW ENFORCEMENT WORKSHEET" showing that at least 2,245 mobile numbers belonged to TracFone's service. **Exh. 1** at ¶ 6; **Exh. 1-C**. The form proposes a charge of $25 per subscriber, which would total $56,125.00. **Exh. 1** at ¶ 7.

8. On March 11, 2019, Class Counsel further conferred with TracFone and disputed TracFone's estimate, and TracFone's contention that collection of the subpoenaed information necessitated a "manual process." *See* **Exh. 1-D** at 4; *also see* **Exh. 1** at ¶ 8.

9. On March 13, 2019, TracFone reduced its request to $3,000.00, stating that TracFone "must review the data before releasing." **Exh. 1-D** at 4. Plaintiff asked for more details. *Id.* at ¶ 9.

78215

3

10. On March 18, 2019, TracFone produced an invoice. **Exh 1-E**. This document stated it would take TracFone 12 hours, and TracFone sought $250.00 per hour. *See id.*

11. On June 13, 2019, Class Counsel conducted a telephone conferral with several representatives of TracFone, including TracFone's counsel and members of TracFone's Information Technology Department. **Exh. 1** at ¶ 11. During that call, TracFone revealed that it had narrowed the mobile numbers set forth in the spreadsheet produced with Plaintiff's subpoena to the 2,245 TracFone numbers automatically by using a query in their database. *Id.* Still, TracFone contended a manual process would be necessary to cull the information, but could not explain why a simple query could not be used. *Id.* Indeed, the only basis TracFone has every given was its March 13 statement that it must review the data before releasing. *Id.*

12. Based on Class Counsel's experience in procuring telephone records from various carriers in class cases like this one, production of the limited subscriber information sought in this case is a straight-forward process for telephone carriers, and is a process that is conducted via an automated process. So far in this case, Sprint has produced data for over 3,000 class members without seeking a penny. And Verizon has worked with Plaintiff to facilitate production of class data without demanding payment.

13. Earlier this year, in another TCPA class case, Plaintiff's counsel obtained customer information from 19 carriers through a similar subpoena process. *Id.* at ¶ 13. The carriers in that case collectively sought information for more than 13,000 unique class members' numbers. *Id.* While many of the carriers charged nothing for their compliance, the most paid to any single carrier was $500.00. *Id.* For example, Verizon produced information for over 4,000 numbers and charged Plaintiff nothing. *Id.* Similarly, Sprint produced data on more than 2,000 numbers without charge. *Id.*

14. In TracFone's case, obtaining this information would likely entail using the same simple approach that it used to narrow the initial list of numbers from 23,000 to 2,245 TracFone numbers (*i.e.,* a query to its database). *Id.* at ¶ 11.

## II.  TRACFONE SHOULD BE COMPELLED TO COMPLY

The Court should compel TracFone's compliance with the subpoena for two reasons. First, equities support compliance without the exorbitant fee TracFone demands. TracFone is the outlier among the carriers in this case, seeking $3,000 for provision of information readily available in its own database when other carriers charge nothing (or far less). Second, TracFone waived its right to object by failing to raise *any* written objections as required by the Civil Rules, precluding it from doing so now.

### A. TracFone's Demand for $3,000 when Other Carriers Charge Nothing (or far less) is Inequitable

Since the Court approved the Class Settlement, Plaintiff has worked with various cellular carriers to obtain contact information for the mobile numbers called in this case. Aside from TracFone, the responses thus far have been favorable. Sprint has already provided responsive data for over 3,000 class members, without charging anything. Additionally, Verizon has worked with Plaintiff in entering a consent motion to facilitate production of all of its customers' information,[3] without demanding any payment. The favorable responses from the other carriers are consistent with the norm due to the ease with which this data is available for production by the carriers.

In a recent opinion, *Keim v. ADF MidAtlantic, Ltd. Liab. Co.,* the Court agreed with the plaintiff's expert's testimony, finding in part that "when asking for data for a list of phone numbers,

---

[3] Verizon believes that state law in California, Pennsylvania, and Delaware may regulate production of subscriber information. Plaintiff submits that the states' law does not govern compliance with the subject *federal* court subpoena, but in an effort to expedite class members' information, the parties agreed to the consent motion. *ECF 179.*

78215

larger carriers such as AT&T have dedicated teams with automated systems that can produce the desired information automatically, efficiently, and at low cost." *Id.*, 328 F.R.D. 668, 678 (S.D. Fla. 2018).

After all, the records sought from TracFone are critical for the provision of class notice in this case. TracFone does not dispute that it has this key information, or that the information is accessible. Rather, TracFone's unwillingness to produce the data is based on Plaintiff's refusal to pay the exorbitant $3,000.00 fee that TracFone seeks.

There is no justification for TracFone to demand $3,000 when other carriers in this case and other TCPA class cases produce the very same data at little or no cost. Moreover, the rationale suggested by TracFone is baseless as TracFone need not "review" the data before producing it. *See* **Exh. 1-D** at 4. If TracFone wishes to conduct a time-consuming review, it is unreasonable to charge Plaintiff or the Class for this self-imposed and unnecessary step; rather, TracFone should do so at its own expense.

Even *arguendo,* where such a "review" necessary, the $250.00 per hour TracFone seeks is unreasonable to perform such a clerical task. Such a request was rejected in *Williams v. Sunbelt Rentals, Inc.,* No. 8:04-cv-1395-T27MSS, 2005 U.S. Dist. LEXIS 51374, at *10 (M.D. Fla. Oct. 12, 2005). The Court found that costs for review by a non-legal staff person was not warranted, reasoning that the third-party caused the subpoenaing party to incur expense in compelling compliance; so, the Court held that no additional cost should be exacted to obtain documents and the third-party should "bear his own nominal cost in reviewing his files and producing the requested documents. The cost of copying at $0.20 per page may be billed…" *Id.,* citing Fed. R. Civ. P. 45(c)(2)(B).

Even in cases that allow for recovery of attorney fees, such recovery is not permitted for

78215

such low-level administrative tasks. *See* also *Indyne, Inc. v. Abacus Tech. Corp.*, No. 6:11-cv-137-Orl-22DAB, 2013 U.S. Dist. LEXIS 185422, at *69 (M.D. Fla. Dec. 6, 2013) (unreasonable to bill attorney rates for tasks that should be been assigned to less expensive labor); *Corwin v. Walt Disney World Co.,* No. 6:02-cv-1377-Orl-19KRS, 2008 U.S. Dist. LEXIS 112545 at *26 (M.D. Fla. Feb. 15, 2008). ("Typically, in cases of any size and complexity, professional staffing is done with an eye toward efficiency, with work performed by the professional with the appropriate level of training and experience. Routine tasks are not more valuable simply because they are performed by a senior attorney."); also *see King v. State Bd. of Elections*, No. 95 C 827, 2003 U.S. Dist. LEXIS 14822, at *9 (N.D. Ill. Aug. 19, 2003) (allowing $50.00 per hour rather than the $315.00 requested for clerical tasks like reviewing documents).

Additionally, the notion that it would take 12 hours to "review" 2,245 line entries that each include only a subscriber name, address and e-mail address is absurd. Such a review should take a matter of minutes, not hours. Moreover, TracFone's demand is inconsistent with costs allowed for subpoena compliance in this District. *See Ariel Syndicate 1910 v. Paramount Disaster Recovery, LLC*, No. 6:17-cv-1279-Orl-37DCI, 2018 U.S. Dist. LEXIS 219721 (M.D. Fla. July 25, 2018) (waiver where non-party failed to timely object) *Horn v. Volusia Cty.*, No. 6:08-cv-18-Orl-19DAB, 2008 U.S. Dist. LEXIS 61426, at *3-5 (M.D. Fla. Aug. 5, 2008) (holding "the only relevant facts are that ACT was validly served with a subpoena, did not object to the production or otherwise timely seek protection from compliance, and is thus, duty bound to comply. How ACT elects to comply with its obligation is its own business. The responsibility to comply with the subpoena is ACT's." The Court allowed copying costs of $0.15 per page); *Williams v. Sunbelt Rentals, Inc.*, No. 8:04-cv-1395-T27MSS, 2005 U.S. Dist. LEXIS 51374, at *9 (M.D. Fla. Oct. 12, 2005) (refusing to order costs of four hours of time to review, reasoning in part the non-party had caused

78215

the party "to incur expense in compelling compliance…to obtain documents to which it is otherwise entitled." The Court allowed copying costs of $0.20 per page). Notably, in this case, TracFone need not even incur copying costs as Plaintiff has specifically requested the data be produced in electronic format, and offered to receive it via electronic mail.

Furthermore, courts routinely deny the assessment of costs by large companies like TracFone, finding the equities do not support it. *See Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.,* No. 12-CIV-81397, 2016 U.S. Dist. LEXIS 58208, at *25-26 (S.D. Fla. Apr. 26, 2016) (holding the "equities do not support an award of costs" where there is a large corporation with significant assets); *In re Altisource Portfolio Sols., S.A.,* No. 14-81156-CIV-DIMITROULEAS/S, 2016 U.S. Dist. LEXIS 185426, at *5 (S.D. Fla. Nov. 9, 2016) (accord).

While it is true that Rule 45(d) requires a party issuing a subpoena to take reasonable steps to avoid imposing undue burden or expense, "[a] non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." *Sun Capital Partners,* 2016 U.S. Dist. LEXIS 58208, *citing In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 303 (S.D. N.Y. 2003). "However, the required 'protection from significant expense does not mean that the requesting party necessarily must bear the entire cost of compliance... [A] non-party can be required to bear some or all of its expense where the equities of a particular case demand it.'" *In re Honeywell Int'l, Inc. Sec. Litig.,* 230 F.R.D. 293, 302-03 (S.D.N.Y. 2003), quoting *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (internal cites omitted).

Moreover, by TracFone's own admission, it has *already* processed the requested data. *Id*. Further, in doing so TracFone does not dispute that it used an *automated* query process to identify that 2,245 of the 23,000 numbers that are TracFone. *Id.;* also see **Exh.** 1 at ¶ 11. This belies any contention by TracFone that a "manual process" is or ever was warranted. The data is indisputably

78215

8

maintained electronically, and the basic subscriber information sought can be gathered using the same sort of query TracFone previously used to identify the TracFone mobile numbers.

### B. TracFone Failed to Raise Any Objection to the Subpoena and Waives any Right to do so Now

TracFone has not raised any written objections. Accordingly, any objections or attempts to avoid compliance with the subpoena have been waived. While Fed. R. Civ. P. 45(d)(2)(B) provides non-parties like TracFone with the option to object, such objection must be in writing. Moreover, "the objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *Id.* Here, TracFone failed to serve any written objection.

Failure to serve written objection to a subpoena within the time specified by Fed. R. Civ. P. 45 typically waives any objections the party may have. *In re Accutane Prods. Liab. Litig.*, Nos. 8:04—md—2523—T—30TBM, 8:05—cv—926—T—30TBM, 2006 U.S. Dist. LEXIS 27642, 2006 WL 1281598, at *1 (M.D. Fla. May 9, 2006); *Universal City Dev. Ptnrs, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 697 (M.D. Fla. 2005); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397, 2016 U.S. Dist. LEXIS 58208, at *13-14 (S.D. Fla. Apr. 26, 2016) (failure to object will generally result in waiver); *Am. Elec. Power Co., Inc. v. U.S.,* 191 F.R.D. 132, 136 (SD. Ohio 1999) (*citing Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44. 48 (S.D.N.Y. 1996); *Angell v. Shawmut Bank Connecticut Nat'l Assoc.,* 153 F.R.D. 585, 590 (M.D.N.C.1994). Under Rule 45, when a non-party is going to incur significant expense from compliance with the subpoena and that non-party has timely objected on those grounds, the Court's order must protect the non-party from significant expense resulting from compliance. *Sun Capital Partners,* 2016 U.S. Dist. LEXIS 58208 at *13 (finding written objections had been made, but still finding that the "equities do not support an award of costs or fees" to the non-party corporate entity.)

78215

### III. CONCLUSION

Fed. R. Civ. P. 45(g) provides that "[t]he court for the district where compliance is required… may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Compliance is required in this District because the subpoena commands TracFone to produce documents in Miami, Florida.[4] TracFone has failed to comply with the subpoena and Plaintiff has been unable to secure compliance through good faith efforts to meet and confer.

Plaintiff respectfully request that the Court order TracFone to produce the subscriber information as set forth in Plaintiff's subpoena within ten (10) days of the Court's order.

---

[4] Plaintiff has also advised TracFone that it could produce the documents via electronic mail, which is how the parties have communicated in large part throughout the conferral process.

78215

**Local Rule 3.01(g) Certification**

Pursuant to Local Rule 3.01(g), Plaintiff's counsel hereby certifies that despite conferring in a good faith effort with the party affected by the relief sought herein, TracFone, through its counsel, to resolve the issues raised in this motion. However, Plaintiff has been unable to do so.

| | |
|---|---|
| s/ *Amy L. Wells* <br> Keith J. Keogh (FBN 126335) <br> Amy L. Wells, *pro hac vice* <br> KEOGH LAW, LTD <br> 55 West Monroe Street, Suite 3390 <br> Chicago, Illinois 60603 <br> 312-726-1092 <br> 312-726-1093 (fax) <br> Keith@KeoghLaw.com <br> Awells@KeoghLaw.com | William Peerce Howard <br> (FBN 0103330) <br> Amanda J. Allen (FBN 0098226) <br> The Consumer Protection Firm <br> 210-A South MacDill Ave. <br> Tampa, Florida 33609 <br> (813) 500-1500 <br> Billy@TheConsumerProtectionFirm.com <br> Amanda@TheConsumerProtectionFirm.com |

*Attorneys for Plaintiff and the Classes*

**CERTIFICTE OF SERVICE**

I hereby certify that on August 13, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, who will send a notice of electronic filing to all counsel of record.

I further certify that on August 13, 2019, I caused a copy of the foregoing motion to be served upon TracFone via email.

s/ *Amy L. Wells*
Amy L. Wells
KEOGH LAW, LTD

78215