# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA - JACKSONVILLE DIVISION

| | |
|---|---|
| THOMAS COOK and EMANUEL BERMUDEZ, individually and on behalf of all others similarly situated, | Civil Action No.    3:16-cv-673-BJD-JRK |
| Plaintiff, | Judge:   Hon. Brian J. Davis |
| vs. | |
| PALMER, REIFLER & ASSOCIATES, and WAL-MART STORES, INC., | Magistrate Judge: Hon. James R. Klindt |
| Defendants. | |

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................1

II.   OVERVIEW OF THE SETTLEMENT & SUMMARY OF LITIGATION ..................3

   A.   Procedural Background ..................................................................3

   B.   Discovery ........................................................................................5

   C.   The Parties' Mediation ..................................................................6

   D.   The Settlement ...............................................................................6

III.   THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT .................................8

IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .........................9

   A.   The Agreement Is the Result of Arm's Length Negotiations. ..............................10

   B.   The Settlement Meets Each of the *Bennett* Factors. ...........................11

     1.   Likelihood of Success at Trial...............................................11

     2.   Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate. ...............................12

     3.   The Complexity and Expense of Further Litigation..................13

     4.   Stage of Proceedings at which Settlement Achieved.................14

     5.   Substance and Amount of Opposition to Agreement. ...............14

V.   THE PROPOSED FEE IS REASONABLE ................................................15

VI.   THE PROPOSED INCENTIVE AWARD IS PROPER ...........................16

VI.   CY PRES RECIPIENT ................................................................17

VIII.   CONCLUSION ...............................................................................19

## TABLE OF EXHIBITS

o   Appendix 1 – Settlement Agreement and Release

   ■   Exhibit 1 – [Proposed] Preliminary Approval Order

   ■   Exhibit 2 – Postcard Notice

   ■   Exhibit 3 – Settlement Website

   ■   Exhibit 4 – Final Approval Order

   ■   Exhibit 5 – Claim Form

o   Appendix 2 – Declaration of Keith J. Keogh

o   Appendix 3 – Declaration of William P. Howard

o   Appendix 4 – Draft Final Approval Order

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012) .....13
*Allapattah Servs., Inc. v. Exxon Corp.*
   No. 91-cv-0986, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006) ....................................15
*Atkinson v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 150274 (M.D. Fla. Dec. 29, 2011)...15
*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, (S.D. Fla. 1988).........................................13
*Bennett v. Behring Corp.*, 737 F.2d 982, (11th Cir. 1984) ......................................................passim
*Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2015 WL 11143078 (S.D. Fla. Feb. 23, 2015) ........17
*Cabot E. Broward 2 LLC v. Cabot*
   2018 U.S. Dist. LEXIS 192706 (S.D. Fla. Nov. 9, 2018) .................................................. 16, 17
*Cooper v. NelNet, Inc.*, 14-cv-314 (M.D. Fla. Aug. 4, 2015).....................................................17
*Dear v. Q Club Hotel, LLC*, 2018 U.S. Dist. LEXIS 42787 (S.D. Fla. Mar. 14, 2018) ...............16
*Desai v. ADT Security Servs., Inc.*, No. 11-1925 (N.D. Ill. Feb. 27, 2013) .................................17
*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011) ...........................................8
*Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015)................11
*Guarisma v. Microsoft Corp.*, 15-cv-24326-CMA (S.D. Fla.)......................................................16
*Hashw v. Dep't Stores Nat'l Bank,* 182 F.Supp.3d 935 (D. Minn. 2016).....................................13
*Hitchman v. Nat'l Enter. Sys.*, 2014 U.S. Dist. LEXIS 30623 (S.D. Fla. Mar. 10, 2014)..............1
*In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) ....13
*In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330 (S.D. Fla. 2011).............................10
*In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*
   Master Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016) ..............................18
*In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306 (11th Cir. 2009).....................................................8
*In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, (N.D. Ga. 1993) ...........................9
*In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) ....................13
*In re Mex. Money Trans. Litig.*, 164 F.Supp.2d 1002 (N.D. Ill. 2000)........................................15
In re Mex. Money Trans. Litig., 267 F.3d 743 (7th Cir. 2001) ....................................................15
*In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La.1993) .....................................................14
*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, (11th Cir. 1992).........................................................9
*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, (N.D. Ga. 2001).................................................10
*James v. JPMorgan Chase Bank, N.A.*
   No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499 (M.D. Fla. June 5, 2017) ...........................13
*Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012).................................................................8
*Keim v ADF Companies, et al., No. 12-cv-80577-KAM* (S.D. Fla. 2020) ...................................13
*Kramer v. Autobytel*
   No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012).........................13
*Legg v AEO*, 14-cv-02440-VEC (S.D. NY 2017).......................................................................18
*Legg v. Laboratory Corporation of America Holdings*
   No. 14-cv-61543-RLR (S.D. Fla. Feb. 18, 2016) ................................................................16
*Lipuma v. American Express Co.*, 406 F.Supp.2d 1298 (S.D. Fla. 2005)......................................3
*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) ...............................13

*Markos v. Wells Fargo Bank, N.A.*
    No. 1:15-cv-01156-LMM, 2017 U.S. Dist. LEXIS 17546 (N.D. Ga. Jan. 30, 2017)...............13
*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).....................................................................1
*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ...........................................................8
*Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200 (11th Cir. 2018).....................................12
*Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. 2019).....................................12
Muransky v. Godiva Chocolatier, Inc., 939 F.3d 1278 (11th Cir. 2019)....................................12
*Newman v. Sun Capital Corp.*
    No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012)...........................11
*Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011)...........................13
*Perez*, 501 F. Supp. 2d at 1380 ...................................................................................... 11, 13, 14
*Steinfeld v. Discover Fin. Svcs*. 12-cv-01118 (N.D. Cal.)............................................................13
*U.S. v. Alabama*, 271 Fed. Appx. 896 (11th Cir. 2008) ...............................................................8
*Warren v. City of Tampa*, 693 F.Supp. 1051 (M.D. Fla. 1988)......................................................9
*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir.1999) .....................................16
*Willett, et al. v. Redflex Traffic Systems, Inc., et al.*
    Case No. 13-cv-01241-JCH-RHS (D.NM 10/24/16)............................................................18
*Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014)...13
*Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sept. 26, 2012).....................16

**Statutes**
47 U.S.C. § 227...............................................................................................................................1
47 U.S.C. § 227(b)(1)(A)(iii)............................................................................................................1

## I.      INTRODUCTION

Plaintiff, Emanuel Bermudez, respectfully moves for an Order of Final Approval of the Class Settlement ("Settlement") reached with Defendants Palmer, Reifler & Associates ("PRA"), and Walmart, Inc. ("Defendants") (Collectively, the "Parties"). A copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1.*

Plaintiff's claims arose under the Telephone Consumer Protection Act ("TCPA"), a law which prohibits calls using an artificial or prerecorded voice to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii).

The "[v]oluminous consumer complaints about abuses of telephone technology … prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). Congress found that "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394, 2394-95 (codified at 47 U.S.C. § 227).

Thus, the TCPA creates a private right of action for persons affected by violations and provides a maximum for statutory damages of $500 per violation, which the Court may treble upon a showing that the violation was willful. *Hitchman v. Nat'l Enter. Sys.*, 2014 U.S. Dist. LEXIS 30623, at *5 (S.D. Fla. Mar. 10, 2014) (citing 47 U.S.C. §227(b)(3)). Plaintiff alleged he received prerecorded robocalls that PRA placed to collect monies allegedly due to Walmart as a result of shoplifting, even though Plaintiff was not the person that Defendants were trying to reach. Plaintiff contends that these prerecorded calls violated the TCPA because they were made to third parties that were designated as wrong numbers or made after a request to stop calling such that there

1

would not be consent for these calls.   Defendants vigorously deny these allegations. The proposed Settlement would resolve all claims in this action.

Pursuant to the Agreement, Defendants will provide a total of Three Million, Five Hundred Thousand Dollars ($3,500,000.00) ("Settlement Amount") to fully settle all claims in this Litigation. A Settlement Class Member who submits a timely claim form will receive a *pro rata* share of the net settlement proceeds after payment of the cost of sending notice of the Settlement to the Settlement Class, settlement administration expenses, Court approved attorneys' fee and expense award, and any class representative incentive awarded by this Court. Plaintiff estimated the pro rata share for each class member who submits a valid claim would equal $1,900 at a five percent claim rate and $957 at a ten percent claim rate.

On July 24, 2019, this Court granted preliminary approval and approved the notice plan to the class. [ECF 178]. Pursuant to the approved notice plan, class members were sent notice to submit a claim and 1,712 timely valid claims have been filed and 35 valid, but late claims were received. *See* [ECF 205-1 at ¶9] (Decl. of Claims Administrator American Legal Claim Services, Inc. filed on April 23, 2020). The parties have agreed to allow the 35 late claims, subject to court approval, as allowing the late claims does not materially impact the timely claims as the payout would be $1,249.381 instead of $1,274.92, which is well within the estimated range provided in the notice.

Further, the claim rate of 6.2% of the class members sent notice is a higher claim rate than in many consumer cases granted final approval.   This is a terrific result especially in light of the fact the contact information for most of the class was unknown and illustrates the effectiveness of

---

1 This calculation is based on administration costs of $71,926.28 requested attorney fees of one third ($1,166,550) and expenses of $58,725.943 and the requested incentive award of $20,000, which would leave a Settlement Fund balance of $2,182,662.78 to be distributed to the claimants.

obtaining subscriber information directly from the telephone carrier in order to send direct notice.

As a further illustration of the class's support for the Settlement, there was no objections to any portion of the Settlement and only one exclusion. [ECF 205-1 at ¶10 & ¶11] (American Legal Claim Services, Inc. Decl.). Lack of objections or even a "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005). Finally, no governmental entity objected to the Settlement after receiving the required CAFA notice. Thus, there is no opposition to this Settlement.

In granting preliminary approval, the Court found the Settlement was within the range of reasonableness, and thus that the class should be given notice. [ECF No. 178]. Nothing has changed to alter that finding. To the contrary, as demonstrated by the claim rate and lack of any objections, the class has indicated solid support for the Settlement. Thus, for the reasons set forth herein as well as those in the motion for attorneys' fees and expenses, Plaintiff respectfully requests this Court grant final approval, award Mr. Bermudez $20,000 as an incentive award; and award Class Counsel $1,165,500.00, which is one third of the all cash common fund, plus $58,725.94 for reimbursement for the expenses class counsel incurred in prosecuting the class claims.

## II.     OVERVIEW OF THE SETTLEMENT & SUMMARY OF LITIGATION

### A. Procedural Background

This class action was filed on May 31, 2016.  [ECF 1].  An Amended Complaint filed November 4, 2016 [ECF 22], a Second Amended Complaint filed March 30, 2017 [ECF 43], and a Third Amended Complaint was filed August 30, 2017. [ECF 59].  After extensive discovery described below, there were two rounds of briefing on Class Certification with Plaintiff's first Class Motion filed October 20, 2017. [ECF 70]. Defendants filed a Joint Response November 13,

2017.   [ECF 81]. Plaintiff filed a Reply (with leave) on November 21, 2017. [ECF 86]. Plaintiff's

Motion for Class Certification was denied without prejudice January 3, 2018. [ECF 95].

Plaintiff then filed his Amended Class Motion on February 23, 2018. [ECF 108].

Defendants each filed separate Responses on March 9, 2018 [ECFs 115-116], and Plaintiff filed

his Reply (with contested leave) on March 23, 2018. [ECF 135]. Both sides filed numerous

Supplemental Authority.   [ECF Nos 149, 153, 156, 157].

The parties also litigated Walmart's Motion for Partial Summary Judgment, filed February

22, 2018. [ECF 104]. Plaintiff responded to the Motion for Summary Judgment filed March 15,

2018. [ECF 125].  Walmart filed their Reply on April 3, 2018 and it then filed Supplemental

Authority.   [ECF No 139 & 148].

Plaintiff also filed a Motion to Exclude the Expert Report of Kostyun on February 22, 2018

[ECF 105], PRA's Response to the Motion to Exclude was filed March 8, 2018 [ECF 113], with

Plaintiff's Reply filed March 27, 2018.   [ECF 139].

The rulings for the above motions were subsequently stayed pending the second mediation

where the Parties traveled to Texas to mediate with mediator Hesha Abrams pursuant to Court

order.   [ECF 164].   As a result of that mediation session, the Parties reached an agreement to

settle the Action.

On July 24, 2019, this Court granted preliminary approval and set May 28, 2020 as the date

of Final Approval Hearing, which is almost exactly four years since this case was first filed.

[ECF. 178].

In order to send direct notice, Plaintiff served subpoenas on ten telephone carriers to obtain

subscriber contact information as discussed below.  This required Plaintiff to work with these

carriers regarding their objections as well as obtaining Court orders relating to production. *Id*.

4

In accordance with the Court's December 5, 2019 order [ECF 199], on February 12, 2020, Plaintiff filed his Motion for Service Award and for an Award of Attorneys' Fees and Expenses to which no class member objected. [ECF 204].

### B. Discovery

The Parties engaged in extensive discovery and conducted numerous conferences relating to such.   Plaintiff served several sets of written discovery requests to Defendants that required numerous conferrals and heavy supplementations through contentious negotiations to obtain the necessary information.

This supplementation included substantial call records that Plaintiff obtained from PRA, as well as third parties.   These call records were then analyzed by the Parties' experts.

There were also numerous depositions that resulted in significant travel.   While Plaintiff's and PRA's depositions were conducted in Florida, Wal-Mart's deposition took place in Arkansas, Plaintiff's expert Mr. Biggertsaff's deposition occurred in South Carolina, Defendants' Experts Mr. Kostyun occurred in Connecticut, and third party witness Genesys in Massachusetts.   *See* Declaration of Keith J. Keogh ("Keogh Decl.") attached as *Appendix 2*, ¶ 17.

As noted above, even after Preliminary Approval was granted Plaintiff engaged in discovery where he subpoenaed ten telephone carriers for class contact information on December 19, 2018. *Id*. at ¶ 18.   On February 8, 2019, Plaintiff sent a second subpoena to eight of the carriers. *Id*. at ¶ 18. After numerous conferrals with counsel for the carriers, Plaintiff obtained the class contact information.   *See* Agreed Motion to Compel Verizon to produce filed August 5, 2019 at [ECF No. 179]; Agreed Motion to Compel New Cingular and Cricket (ATT) filed August 26, 2019 at [ECF No. 183]; and Agreed Motion to Compel T-Mobile filed November 27, 2019 at [ECF No. 196].

This discovery also resulted in contested discovery motion practice.  *See* Motion to Compel Straight Talk filed August 13, 2019 at [ECF 180]; Granted in Part November 4, 2019 at [ECF 195].

### C.  The Parties' Mediation

The Settlement is the product of substantial and active arms' length negotiations that took place over years. On September 29, 2017, the Parties unsuccessfully participated in private mediation with mediator Mark A. Buckstein in Southern Florida pursuant to Court order.   [ECF No. 53].   Plaintiff took time off work to travel to Boca Raton for this mediation, which resulted in him losing his job.

Almost a year later on September 20, 2018, the Parties traveled to Texas to participate in a second private mediation with mediator Hesha Abrams pursuant to Court order.   [ECF No. 164]. As a result of that mediation session, the Parties reached an agreement to settle the Action on September 25, 2018. [ECF No. 165].

### D.  The Settlement

The Settlement provides Defendants will pay Three Million, Five Hundred Thousand Dollars ($3,500,000.00) into a non-reversionary Settlement Fund for the Settlement Class, which is defined as follows:

  (i)   **Wrong-Number Class**:   (1) All persons in the United States (2) to whose cellular telephone number (3) PRA placed or caused to be placed a non-emergency telephone call (4) on behalf of Walmart (5) using an artificial or prerecorded voice (6) within 4 years of the complaint (7) where PRA called the wrong number, such as where PRA listed that number on its Wrong Number List.

  (ii)   **Call after Wrong-Number Notation Class**:   (1) All persons in the United States (2) to whose cellular telephone number (3) PRA placed or caused to be placed a non-emergency telephone call (4) on behalf of Walmart (5) using an artificial or prerecorded voice (6) within 4 years of the complaint (7) where PRA called the wrong number after it was already

informed it had the wrong number, such as where the number was previously added to PRA's Wrong-Number List.

(iii)   **DNC Class**: (1) All persons in the United States (2) to whose cellular telephone number (3) PRA placed or caused to be placed a non-emergency telephone call (4) on behalf of Walmart (5) using an artificial or prerecorded voice (6) within 4 years of the complaint (7) where PRA called after receiving a do not call request, such as where the number was previously added to PRA's Do Not Call List.[2]

[ECF No. 171-1 at 34].

The call records revealed there were 20,489 unique numbers for the Wrong Number Class, 9,977 unique numbers for the Call after Wrong Number Notation Class and 1,282 unique numbers for DNC Class. Because some of the those unique cellular numbers fit into two or three of the above classes, the total number of unique cellular numbers after combing the classes and after de-duplication equals 23,083.

Consistent with Eleventh Circuit law and Federal Rule 23(h), the notice advised class members of the Settlement's terms, the proposed fee and expense award, as well as the class members' right to file a claim, request exclusion and/or object to the Settlement and proposed fee and expense award. The notice expressly told class members "Class Counsel will ask the Court to approve payment of up to one third of the Settlement Fund, or $1,165,500.00, for attorneys' fees plus reasonable expenses. Class Counsel also will ask the Court to approve payment of $20,000 to Plaintiff for his services as Class Representative." *See Appendix 1 - Settlement Agreement and Release*, Exhibit 2 at ¶ 8. Once again, there were no objections to any portion of the Settlement. Likewise, no governmental entity objected to any portion of the Settlement after receiving the

---

[2] Excluded from the Settlement Class are Defendants, their legal representatives, assigns, and successors, and any entity in which the Defendants have a controlling interest. Also excluded from the Class is the Judge to whom this case is assigned as well as the Judge's immediate family, and any individual who opts out of the Settlement Class.

7

required CAFA notice of the Settlement.

The class administration and notice costs through American Legal Claim Services, Inc. are $71,926.28. *See* [ECF 205-1 at ¶ 14].

### III.   THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT

To satisfy Rule 23, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *U.S. v. Alabama*, 271 Fed. Appx. 896, 901 (11th Cir. 2008); *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1314 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"). However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations and citation omitted). Moreover, neither Rule 23 nor due process requires that class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).

The plan approved by the Court provided exceptional notice that exceeds Rule 23 and due process requirements. Pursuant to the approved notice plan, Plaintiff obtained contact information from the telephone carriers and the Claims Administrator then sent direct notice to each class member for which valid contact information was located. *See* ECF 205-1 at ¶3-6 (American Legal Claim Services, Inc.'s Decl.). The direct notice summarized the claim, gave the estimate of what each class member would receive, stated the exact amounts sought for incentive awards and for fees (in both a dollar amount and as a percentage of the fund), provided a toll-free number for questions, and directed class members to the settlement website. *Id.* Appendix 1. The website

8

enabled class members to review the settlement agreement and exhibits, the preliminary approval order, fee petition, long form notice and FAQs. *Id.*   The site's FAQs also provided a toll-free number to reach class counsel. (www.PRATCPASettlement.com) ("You can also call Class Counsel with any questions at 1-866-726-1092."). The claims process outlined in the notice was first rate, allowing class members to submit a claim via mail, the settlement website or even through the telephone with a claim *Id.* In short, the notice complies with the court-approved plan, exceeds Rule 23 and due process requirements, and fully apprised the class of all material terms and their rights. *See e.g.*, *Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *15 (11th Cir. Dec. 2, 2015) (unpublished) ("all material facts were available to class members because a full copy of the settlement agreement, and the release, were available on a website referenced in the Notice.").

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Judicial and public policy favor the voluntary settlement of class litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp. 1051, 1054 (M.D. Fla. 1988) ("settlements are highly favored in the law."). With a settlement, class members are ensured a benefit as opposed to "the mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

A settlement should be approved if it is fair, reasonable, and adequate, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In determining this, some deference should be given to the decision of the parties. *See Warren*, 693 F.Supp. at 1060 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Also, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323,

1329 (S.D. Fla. 2001) (citation omitted). In determining whether a settlement is "fair, adequate, and reasonable," the following factors (the *Bennett* factors) are generally considered:

> (1) likelihood of success at trial; (2) range of possible recovery; (3) point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) complexity, expense and duration of litigation; (5) substance and amount of opposition to the settlement; and (6) stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (internal citation omitted). That is the case here, as the Agreement is the result of arm's length, informed negotiations between the parties with the assistance of a neutral mediator, and satisfies each of the *Bennett* factors.

### A.  The Agreement Is the Result of Arm's Length Negotiations.

The context in which the Agreement was reached confirms it was the result of arm's length and informed negotiations between the parties, not collusion. To start, the Agreement only came about after four years of litigation including two separate mediations and after extensive discovery including expert discovery. Further, the parties briefed two rounds of summary judgment and class certification. These extensive efforts gave Class Counsel ample information about the facts and the chance of success, and enabled them to evaluate the terms and ensured a fair compromise. *See Appendix 2* (Keogh Decl.) at ¶10-¶20 and *Appendix 3* (Howard Decl.).

The fact the parties only reached a deal after a second in-person mediation session with an experienced neutral further demonstrates the absence of collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1345, 1349 (no

10

collusion where settlement reached by capable and experienced counsel with the assistance of a well-qualified, experienced mediator). As such, it is clear this settlement is the result of arms' length, informed negotiations, and thus it should be approved.

**B.  The Settlement Meets Each of the *Bennett* Factors.**

In addition to being the product of arm's length negotiations, the Agreement also meets each of the Eleventh Circuit's *Bennett* factors.  It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits."  *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'"  *Id*. Here, each factor weighs in favor of granting final approval.

**1.          Likelihood of Success at Trial.**

For the first *Bennett* factor, "[t]he likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp.2d at 1319. Where success at trial is uncertain, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital, Inc.*, 2012 U.S. Dist. LEXIS 121843, *30 (M.D. Fla. Aug. 28, 2012).

At the time of the settlement, Walmart's motion for partial summary judgment was pending. [ECF No. 104].

Against these myriad hurdles and uncertainties, the Settlement guarantees substantial cash relief. *See Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354, *38 (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class Members will receive an immediate cash benefit…") (brackets added). Thus, when the strengths of the claims are weighed against the legal and factual obstacles the class faces, and the complexity of class action practice, there should be no doubt that this settlement is in the class's best interests. *See Appendix 2* (Keogh Decl.) at ¶25.

11

This risk, as well as the risks the Court would deny class certification or Wal-Mart would prevail on vicarious liability further supports approval of this settlement. *See Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1218 (11th Cir. 2018), *opinion vacated and superseded*, 922 F.3d 1175 (11th Cir. 2019), *reh'g en banc granted, opinion vacated*, 939 F.3d 1278 (11th Cir. 2019) (noting the district court's discussion of the "significant legal hurdles class counsel faced..." at the time of settlement.) The first *Bennett* factor strongly weighs in favor of approving it.

## 2.     Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate.

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *See In re Sunbeam*, 176 F.Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F.Supp.2d 1292, 1326 (S.D. Fla. 2007) (quoting *Lipuma*, 406 F.Supp.2d at 1322). However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id*.

The monetary relief secured for the class is substantial and provides for almost $1,500 per claim. This is a terrific result as the TCPA provides for $500 per call. *See Muransky*, 905 F.3d at 1205 (affirming FACTA settlement where class members would receive less than $100 as it was likely the potential maximum recovery would be $100, not $1,000, noting "Dr. Muransky acknowledged there was 'a good chance' each class member would recover the $100 minimum statutory damage award if the case went to trial. At the fairness hearing, the District Court agreed …"). This result is also plainly reasonable because the relief easily surpasses the potential per-class-member benefit conferred in almost every other TCPA class settlements that received final

approval.[3]   Just recently, the Southern District of Florida approved a TCPA class settlement where each class member received $400 per claimant and the court remarked that $400 was the largest per class member recovery he could recall and an excellent result for the class.   *See Keim v ADF Companies, et al., No. 12-cv-80577-KAM* (S.D. Fla. 2020).

### 3.        The Complexity and Expense of Further Litigation.

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381 (citation omitted).

---

[3]  *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (holding class counsel's result of "$81 per class member who submitted a claim equals or exceeds the typical award in a TCPA class action."); *Markos v. Wells Fargo Bank*, *N.A.*, No. 1:15-cv-01156-LMM, 2017 U.S. Dist. LEXIS 17546, at *11 (N.D. Ga. Jan. 30, 2017) (finding $24 per class member to be "an excellent result"); *Wojcik v. Buffalo Bills, Inc.*, Case No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014) (class claimants to receive $57.50-$75.00 gift card); *In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) at DE 123, p. 1 (only injunctive relief for class) and DE 124 (settlement granted final approval); *Hashw v. Dep't Stores Nat'l Bank,* 182 F.Supp.3d 935, 944 (D. Minn. 2016) (Kyle, J.) (approving a TCPA settlement that yielded $33.20 per claimant); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each claimant would be awarded $39.66) (Holderman, J.); *Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant.); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

This factor favors approval because the expense and complexity of further litigation would be substantial and require possibly trial and subsequent appeals. Moreover, continued litigation would delay the case's resolution, impose additional substantial expense on both sides, and consume substantial judicial resources. In these circumstances, it is "proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323 (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993)); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

## 4. Stage of Proceedings at which Settlement Achieved.

The next *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383 (citation omitted).

The Agreement was preceded after several years of litigation including expert discovery, two rounds of briefing certification and summary judgment.   Even then, the case was not settled until after two separate mediations, a year apart, on September 29, 2017 and September 20, 2018, before two different professional neutrals. Thus, the settlement is the product of full knowledge of the facts, and ample motions and rulings.

On top of that, Class Counsel were able to bring to substantial expertise to bear on this case from their experiences in other TCPA class actions, which should leave no doubt that they had sufficient information and knowledge to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation. *See Appendix 2* and *3*.

## 5. Substance and Amount of Opposition to Agreement.

The final *Bennett* factor is the substance and amount of opposition to the Agreement. There

14

is none. The complete lack of opposition and terrific claim rate for calls that took place years ago, show this factor weighs fully in support of final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval.") (citing *Bennett*, 737 F.2d at 986); *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 U.S. Dist. LEXIS 88829, *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.") (brackets added).[4]

In sum, the Agreement meets all *Bennett* factors. For this additional reason, it is fair, reasonable, and adequate, and thus should be granted final approval.

## V.   THE PROPOSED FEE IS REASONABLE

As explained in Plaintiff's petition for Attorney Fees [ECF 204], the one-third percentage, which is $1,165,500 plus $58,725.94 for reimbursement for the expenses they incurred is common and approved in multiple consumer class actions in this Circuit in consumer cases including the TCPA. *See Muransky*, 905 F.3d at 1217-18(Affirming one third of the settlement plus expenses in consumer statutory class action over class member objections.) (Vacated on other grounds); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 150274 at *19 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of the common fund); *Seghroughni v. Advantus Rest., Inc.*, 2015 U.S. Dist. LEXIS 64602 at *2 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable…"); *Cabot E. Broward 2 LLC v. Cabot*, 2018 U.S. Dist. LEXIS 192706 at *20 (S.D.

---

[4]  *See also In re Mex. Money Trans. Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (that "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements."), *aff'd*, 267 F.3d 743 (7th Cir. 2001); 2 McLaughlin on Class Actions §6:10 (10th ed.) ("the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate.").

Fla. Nov. 9, 2018) (citing "19 cases from this Circuit in which attorneys' fees amounting to 33%

or more of a settlement fund were awarded," including settlements of $310 million, $77.5

million, $75 million, $40 million, and $25 million); *see also Waters*, 190 F.3d at 1295-96

(Eleventh Circuit affirmed a 33.33% fee award ($13.33 million) in a $40 million settlement that,

unlike here, required unclaimed funds to be paid back to the defendant); *Wolff v. Cash 4 Titles*,

2012 U.S. Dist. LEXIS 153786 at *13 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is

considered standard in a contingency fee agreement."); and *see Camden I*, 946 F.2d at 774-775

("an upper limit of 50% of the fund may be stated as a general rule, although even larger

percentages have been awarded.").[5] Thus, the reasonableness of a one-third percentage, plus

expenses, is fully supported by the *Johnson/Camden* factors endorsed by the Eleventh.

     In addition, there was no clear sailing agreement and the notice expressly advised the

class of the exact amount Class Counsel would seek. [ECF 204-1 at Appendix 1]. Not a single

class member objected.

## VI.    THE PROPOSED INCENTIVE AWARD IS PROPER

     Incentive payments are commonly awarded to class representatives for their service to the

class in vindicating their rights and enabling them to secure relief on their common claims, as

contemplated by Federal Rule 23. *See Muransky*, 905 F.3d at 1218 ("Many circuits have endorsed

incentive awards and recognize them as serving the purposes of Rule 23.") (internal citations

omitted). Here, Mr. Bermudez seeks $20,000 for his own personal efforts responding to written

---

[5] See also *Guarisma v. Microsoft Corp.*, 15-cv-24326-CMA, ECF No. 79, pp.7-8, ¶g.-¶j., and ¶14 (S.D. Fla. Oct. 27, 2017); *Legg v. Laboratory Corporation of America Holdings*, No. 14-cv-61543-RLR, ECF No. 227, p.7 (S.D. Fla. Feb. 18, 2016); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-JIC, ECF No. 151, ¶15 (S.D. Fla. Aug. 2, 2016); *Dear v. Q Club Hotel, LLC*, 2018 U.S. Dist. LEXIS 42787 at *11 (S.D. Fla. Mar. 14, 2018) ("A review of the case law reveals that a 33.3% fee award is a consistent award in class action common fund cases.").

discovery, being deposed, and attending the mediation in Southern Florida. Keogh Dec at ¶ 29. Subsequently, Mr. Bermudez was fired for taking the day off to attend the first mediation in this case and he turned down substantial individual settlement offers to fight for the class at a time when his co-plaintiff, Mr. Cook accepted an individual settlement offer. *Id.* Plaintiff more than subjected himself to the "inconvenience and time delays" associated with a class action. As such, an award of $20,000 is more than appropriate. *See, e.g.*, *Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2015 WL 11143078, at *3 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 5905415, at *11 (S.D. Fla. Nov. 9, 2018) (approving $50,000 per plaintiff, noting "[t]ogether, the requested awards total $100,000, or 0.1% the amount recovered for the Class, which is well within the range of incentive awards in other cases.") (collecting cases approving incentive awards ranging from $15,000 to $1.76 million); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Cooper v. NelNet, Inc.*, 14-cv-314, ECF No. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) (approving a $25,000 incentive award); and *Muransky*, 905 F.3d at 1219 (affirming $10,000 incentive award in FACTA case that settled months after being filed, where plaintiff was not deposed and did not have to answer written discovery).

Like for the attorney fee request, the notices expressly advised the class of the exact amount Plaintiff would seek. *See* ECF 205-1 (Decl. of American Legal Claim Services, Inc.) Ex. A. Not a single class member objected. Thus, the proposed incentive award should be approved.

## VI.    CY PRES RECIPIENT

In this settlement, there is a second distribution for any uncashed checks and in no event will the money revert to Defendants. In the event any funds remain from uncashed checks after

the second distribution, Plaintiff proposes the remaining funds be distributed to the National Consumer Law Center ("NCLC") and earmarked for work to maintain TCPA protections for consumers. *See Legg v. AEO*, 14-cv-02440-VEC (S.D. NY 2017) (TCPA) (Approving NCLC for TCPA class case); *Willett, et al. v. Redflex Traffic Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS (D.NM Oct. 24, 2016) (TCPA) (same); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation,* Master Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016) (Same); *Leung v XPO,* 15 C 03877, ECF 161 (N.D. Ill. May 30, 2018) (rejecting objector's challenge to NCLC because Class Counsel[6] was associated with fundraising arm of NCLC where he had no role in governing or controlling NCLC). *Leung* further found that "NCLC is also funded by reputable organizations, including the Illinois Office of the Attorney General and the W.K. Kellogg Foundation, which supports the finding that NCLC is a reputable nonprofit. *See* https://www.nclc.org/about-us/nclc-supporters.html (last accessed May 28, 2018)." In fact, one would be hard pressed to find another organization so closely aligned to the class interests to be protected by the TCPA[7].

While any potential cy pres will be nominal since it is only uncashed checks after multiple

---

[6]  Undersigned was Class Counsel in *Leung*. Mr. Keogh is a member of the Partners Council for NCLC. As found by *Leung*, NCLC has a separate Board of Directors and full-time staff who run NCLC. *See* Mr. Keogh's declaration attached as *Appendix 2*, ¶31.

[7]  NCLC has commented to the FCC on almost every major, and many minor, proceedings, rulemakings and requests for exemptions under the TCPA that have come up since late 2014 with the FCC. *See* https://www.nclc.org/issues/robocalls-and-telemarketing.html It is widely seen as the leading consumer voice and the expert on TCPA matters pending before both the FCC and Congress. *Id*. NCLC staff meet regularly, almost bi-monthly, with staff of the former and current FCC Chairman's office, as well as staff of other Commissioners' office, and staff of the Consumer and Governmental Affairs Bureau. *Id*. Many of these filings are simple ex parte meeting summaries, but many single filings also reflect multiple meetings held on one day. In addition, NCLC wrote the amicus to the DC Circuit Court on behalf on behalf of several of the national consumer groups defending the 2015 Omnibus Order (which NCLC was largely instrumental in effecting -- as can be seen from a search of that order for either NCLC staff member Margot Saunders or NCLC's name. *Id*. NCLC staff has also testified in the Senate defending the TCPA last time the issue was before it. *Id*.

distributions, it is important to ensure that every the class funds benefit the class.

## VIII.   CONCLUSION

This Settlement provides substantial cash benefits, it is the product of full discovery, substantial litigation and arm's length negotiations with an experienced mediator, plus it satisfies each of the six *Bennett* factors. The Court's preliminary approval order already found the Settlement within the range of reasonableness, nothing has changed to disturb that conclusion, and to the contrary the claim rate and lack of objections show the Settlement is fair, reasonable and adequate. Thus, Plaintiff requests an order granting final approval, awarding Mr. Bermudez $20,000.00 as an incentive award, awarding Class Counsel $1,165,500.00 plus $58,725.94 for reasonable attorneys' fees, inclusive of expenses. A proposed final approval order, which is also being emailed to chambers, is hereby attached as *Appendix 4*.

Respectfully Submitted,

/s/ Keith J. Keogh
Keith J. Keogh (FBN:0126335)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.726.1092 (Main)
Keith@KeoghLaw.com

William P. Howard, Esq. (FBN: 0103330)
Amanda J. Allen (FBN 098288)
THE CONSUMER PROTECTION FIRM, PLLC
4030 Henderson Blvd.
Tampa, Florida 33629
Telephone: (813) 500-1500
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

Attorneys for Plaintiff, Emanuel Bermudez

## **LOCAL RULE 7.1(a)(3) CERTIFICATION**

Counsel for Plaintiff has conferred with Defendants' Counsel and Defendants do not oppose the relief requested herein.


Respectfully Submitted,

/s/ Keith J. Keogh                                                            William P. Howard, Esq. (FBN: 0103330  
Keith J. Keogh (FBN:0126335)                Amanda J. Allen (FBN 098288)  
Keogh Law, LTD.                                 THE CONSUMER PROTECTION FIRM, PLLC  
55 W. Monroe St., Ste. 3390               4030 Henderson Blvd.  
Chicago, Il 60603                              Tampa, Florida 33629  
312.726.1092 (Main)                        Telephone: (813) 500-1500  
Keith@KeoghLaw.com                     Billy@TheConsumerProtectionFirm.com  
                                                      Amanda@TheConsumerProtectionFirm.com


Attorneys for Plaintiff, Emanuel Bermudez

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

By: s/ *Keith J. Keogh*
Keith J. Keogh